# CASES DETERMINED

IN THE

# SUPREME COURT OF JUDICATURE

OF THE

## STATE OF NEW JERSEY.

JUNE TERM, 1892.

54 393
69 565

### THE STATE ADS. WILLIAM HANCOCK.

1. The act of February 12th, 1889, authorizing the Sessions to certify a forfeited recognizance for prosecution to the Circuit or Supreme Court is not unconstitutional.
2. Such act is complete in itself, and its reference to the act to which it is a supplement, with respect to the manner of its prosecution, does not invalidate it.
3. A culprit giving a recognizance to appear to an indictment, and not to depart from the court without leave, is not discharged from his obligation by the quashing of the indictment.

On case certified from the Mercer Circuit.

Argued at February Term, 1892, before BEASLEY, CHIEF JUSTICE, and Justices DEPUE and VAN SYCKEL.

For the state, *W. Holt Apgar* and *Bayard Stockton, Prosecutor of the Pleas.*

For the defendant, *Horatio N. Barton.*

393

The opinion of the court was delivered by

BEASLEY, CHIEF JUSTICE.     This procedure has been placed before this court for its advisory opinion by the judge of the Circuit Court of the county of Mercer.   The certificate of the Circuit judge is as follows, viz.:    The Mercer county grand jury, at the term of October, A. D. 1890, of the Court of Oyer and Terminer and General Jail Delivery of that county, indicted one Jacob Bush under the act found on page 338 (*Pamph. L.* 1888), for having feloniously given and having purported to give information where, how and of whom and by what means counterfeit coin, paper money and tokens of value could be procured and had, and what purported to be counterfeit coin, &c., could be procured and had ; said indictment was taken down to the Court of General Quarter Sessions of the Peace of said county for trial ; on November 11th, 1890, said Bush appeared before said Court of General Quarter Sessions, pleaded not guilty to the said indictment and gave bail in the sum of $1,000, with William Hancock as surety, for his appearance to answer said indictment on November 18th, 1890, and not to depart the court without leave.    Before November 18th, 1890, the said Bush's plea of not guilty was retracted for the purpose of making a motion to quash said indictment ; that such motion was made between entering said bail and the day fixed for trial, to wit, November 18th, 1890, and after argument on behalf of the state and said Bush, the said indictment was quashed ; the defendant's counsel then moved a discharge of Bush's said bail, and the motion was denied ; the grand jury of the said county at a subsequent term of said court, to wit, the term of January, A. D. 1891, indicted the said Bush, under the same act, for having feloniously aided, assisted and abetted one J. E. Hollman in a certain felonious and fraudulent scheme and device, offering and purporting to offer for sale, loan, gift, exchange and distribution, counterfeit coin, paper money and other tokens of value called bills, green articles, &c.; after the return of the last-mentioned indictment, Bush's surety was notified to produce the defendant on

a certain day thereafter before the said court, and the said Bush not appearing on the day so named in the notice to his surety, the recognizance given with said Hancock as surety, at the October Term, A. D. 1890, of the said court, was forfeited, and said forfeiture was certified into the Circuit Court of the said county ; that a *scire facias* against said William Hancock was issued out of the said Circuit Court, and pleas were filed thereto by said Hancock, raising the following questions, which are hereby certified to the Supreme Court for its advisory opinion :

*First.*—Is the act on page 14, *Pamph. L.* of 1889, constitutional ?

*Second.*—Was the quashing of the indictment found against Bush at the October Term, A. D. 1890, such a final determination of the cause in which the said recognizance was entered at that term as will discharge the bail from the obligation of producing the defendant ? Was the recognizor discharged from such obligation by the act found on page 852, *Rev. Sup.,* § 1 ?

The first problem thus propounded for solution relates, as it will be perceived, to the jurisdiction of the Circuit Court over a proceeding of this character. It is admitted that the course in question is in accordance with the provisions of the statute approved February 12th, 1889, which is in these words, to wit: " That hereafter it shall be lawful for the Court of General Quarter Sessions of the Peace in which any recognizance has been, or may be, forfeited to certify such forfeiture into the Supreme Court or the Circuit Court of the county in which such forfeiture hath been, or may hereafter be, made, to be therein prosecuted in the manner and with the costs provided in the several sections of the act to which this is a supplement."

In the instance now before us, this recognizance having been forfeited before the Court of General Quarter Sessions of the Peace, such forfeiture was thereupon certified to the Circuit Court of the county of Mercer, and the prosecution therein resulting is the procedure now under consideration.

Upon this point the only question raised respects the legality of the statute itself, the contention being that it conflicts with that provision of the constitution that declares "that no law shall be revived or amended by reference to its title only, but the act revived, or the section or sections amended, shall be inserted at length," and also to that other regulation that ordains "that no act shall be passed which shall provide that any existing law, or any part thereof, shall be made or deemed a part of the act, or which shall enact that any existing law, or any part thereof, shall be applicable, except by inserting it in such act."

With respect to the first of the constitutional paragraphs just quoted and the objection based upon it, we deem it sufficient to say that, in our opinion, such provision is entirely inapplicable to the present case. The act criticised does not, in the constitutional sense, amend the statute to which it is a supplement, and, of course, there can be no pretence that it in any degree revives it. The primary act makes provision for the transfer of forfeited recognizances from the Oyer and Terminer to the Circuit Court for prosecution, and this disposition remains intact; the supplementary law in no wise, and in no measure, modifies or affects it. The original act is complete and perfect as to its purposes; it needs no amendment, and none has been essayed; it arranges for the prosecution of recognizances forfeited in the Oyer and Terminer, the supplement for these forfeitures in the Sessions; these legal schemes are several and distinct.

The court is of opinion that there is no force whatever in this objection.

Nor do we think that the second exception to this supplement has any greater solidity. Such contention is founded on the assumption that inasmuch as the last clause in this supplement declares that the suit that it authorizes is to be prosecuted "in the manner and with the costs provided in the second section of the act" to which it is a supplement, that thereby it violates the constitutional prohibition of acts making an existing law applicable or a part of such subsequent act.

This particular provision of the constitution thus appealed to has on several occasions been recently considered by this court, and thus far it has invariably been circumscribed by construction so as not to apply to that class of cases to which the present one belongs. The clause has been deemed a refractory one and one most difficult to utilize within the bounds of reason. When the legislature authorizes, as frequently the case, a new suit to be brought, it thereby, either expressly or by implication, directs such suit to be conducted in the mode prescribed by the Practice act, and it would be little short of the *reductio ad absurdum* to maintain that such reference to the general law regulating procedures is forbidden by this constitutional provision, and that consequently at such times the greater part of the Practice act must be re-enacted. All egregious constructions of this sort have already been exploded, and it has been intimated that it may be probably a universal test in such instances as the one before us, that if the expressions in a given act of reference to antecedent laws may be struck out or eliminated without altering or impairing the effect of the law in which they are found, that such references are harmless and can possess no invalidating force. Applying this criterion to the present case, this supplement becomes plainly unassailable; for, if we expunge from it its entire reference to the original act, the legal character and methods of the prosecution which it inaugurates would not be affected by the obliteration. Besides, it may well be doubted whether this prescription of the fundamental law can in any case be operative as between a statute and its supplement; for, by such a relationship, the statutes are unified in substance and effect, so that, of necessity and in the absence of all expression for that purpose, the appropriate sections of the two laws being thus blended, must co-operate and interact so as to effect the legislative purpose. The object of this provision of the constitution was undoubtedly to prevent covert and surreptitious legislation, a fraud that, there is reason to believe, cannot be practiced in the enactment of supplemental laws.

In addition to these considerations we are also of opinion that this supplement, being in itself a complete and perfect act of legislation, might, according to the principle established in Campbell *v.* Board of Pharmacy, decided in this court and approved of by the Court of Errors, refer, without violating the constitution, to another general law, in order to provide a method to execute its purpose. 16 *Vroom* 241 ; *S. C.*, 18 *Id.* 347.

The objection must be overruled.

The second interrogatory contained in the judicial certificate from the Circuit Court, and to which a response is asked, relates to the effect upon the recognizance of the quashing of the indictment, the contention being that thereby the conusors became freed from their obligation.

In order to understand this argument the circumstances are to be borne in mind. One Bush, being under an indictment for a statutory offence, entered into the recognizance now under consideration, with the defendant, Hancock, as his surety, the same containing a condition, " for the appearance " of the culprit, " to answer said indictment on November 18th, 1890, and not to depart the court without leave."

Before the day thus designated this indictment was quashed, and a motion was thereupon made to discharge Bush's bail. That motion was refused. Subsequently Bush, having been again indicted, under the same statute in a different form, notice was given to his surety to produce him before the court on a given day, and, default being made at the time specified, the recognizance was duly forfeited of record.

From this brief summary of the facts it will be observed that the position now taken in behalf of this defendant is, that one of the express stipulations of the obligation entered into by him should be held by the court to be of no binding force whatever. He stipulated that Bush should " not depart the court without leave." That stipulation has been broken, and it is now asserted that such breach is nugatory, inasmuch as the stipulation itself has no legal efficacy.

That a stipulation of this kind was valid and obligatory at common law is not to be doubted. It was so declared more than thirty years ago by this court, after full consideration, in the case of the *State* v. *Stout*, 6 *Halst.* 125. It was there judicially determined that a recognizance in general binds to three things—*first*, to appear to answer either to a specified charge, or to such matters as may be objected; *second*, to stand to and abide the judgment of the court, and, *third*, not to depart without leave of the court; and that each of these particulars was distinct and independent. The court further said that the party was not to depart until discharged, although no indictment should be found against him; or although he be tried and found not guilty by a jury.

This subject is exhaustively discussed and the leading authorities cited in the learned and well-considered brief with which we have been favored in this case by the counsel of the state, but we do not deem it necessary further to dwell upon the topic, as the decision just referred to is, in principle, directly in point and in all respects is of the highest authority, and as the rule established by it has in no wise been called in question.

Thus far the subject seems to be free from difficulty, but there is another aspect of it which has laid the ground for the principal argument in behalf of the defence. It is argued that our statute relating to recognizances has annulled the condition usually contained in them, to the effect that the culprit shall not depart the court without leave. The statutory language thus relied on is this: "That every recognizance entered into, before any court having criminal jurisdiction in this state, shall remain in full force and effect until the cause in which said recognizance shall be entered into, shall be finally determined or the same discharged by the order of the court."

In the application of this statute to the case before the court, it was insisted by the counsel of the defendant that the present recognizance having been given in a proceeding under the indictment in question, when that indictment was quashed there

was within the purview of the act a final determination of the cause to which the recognizance related. It was argued that the only cause pending before the court was the indictment, and that to annul it was to annul and, consequently, to determine such cause.

It will be observed that in this course of reasoning it is assumed that the indictment is synonymous with "the cause," but this is not to be admitted. The indictment is not "the cause," the accusation of criminality is the cause, and the indictment is an incident in pursuing the accusation. It is true that the term "cause" sometimes expresses a suit or action, but it has a broader signification, which comprises the prosecution of a purpose or object, and it seems to me that the word "cause" in this act is used in the sense expressed by the word prosecution. Taken in this signification, the cause cannot be said to be finally determined when the indictment is quashed, for the indictment is but a formal part of the prosecution.

All rational intendment is adverse to the narrower and special meaning of the word cause as employed in the statute, for it is hardly conceivable that it was the legislative purpose to absolve a criminal who was under bail from all obligation to render himself in court in the event of the existence of a flaw in the indictment. In that way criminals of the highest grade and of the most dangerous character would often escape the pursuit of justice. In my opinion, the quashing of this indictment did not finally determine the cause—that is, the prosecution of this culprit.

And, in addition to this view, it seems to me that the contention on the part of the state that the statute under consideration has not the effect of invalidating the legal operation of the recognizance in any particular, is well founded. The statutory language does not express, and there is no indication of, such a purpose. As we have seen, the common law bound the recognizor to appear up to the final determination of the prosecution, and, then, beyond that occurrence, to remain in the power of the court until he was discharged by the order of the court. The statute declares that the recognizance shall

remain in full force until the final determination of the cause, and so far it is merely declaratory of the common law; but it does not say that the recognizance shall have no effect beyond the event so designated. The familiar rule is that statutes derogatory of the common law are to be construed strictly, and it is not perceived how, in the light of such a principle, it can be claimed that the effect which, on general legal rules, is to be given to this clause of the recognizance has been annulled by an act that has no reference to it in terms or by necessary implication, and when such abolition would, in a large degree, be hostile to public policy.

Let the Circuit Court be advised that it is the opinion of this court that, as the case stands upon the certificate before us, the procedure on this recognizance is sustainable.