WILLIAM A. QUIGLEY, ADMINISTRATOR, v. LEHIGH VALLEY RAILROAD COMPANY OF NEW JERSEY.

Argued June 8, 9, 1910—Decided April 7, 1911.

1. The act of April 13th, 1909, entitled "An act to extend and regulate the liability of employers for injury or death to employes in certain cases," changes the common law rule which relieves the master from responsibility for injuries to a servant caused by the negligence of a fellow servant, and imposes liability upon the master for injuries so occasioned, in the class of cases embraced in the statute.

2. The constitutional provision which declares that "every law shall embrace but one object, and that shall be expressed in the title," does not require that the title of a statute, which deals with a certain class of cases, shall contain a recital of the various cases to which it applies. Neither does it require that the means by which the object of a statute is to be carried into effect shall be expressed in the title.

3. The act of April 13th, 1909, is complete in itself; and the declaration contained in it that provisions of law relating to actions for causing death by negligence shall apply to actions brought under it by an executor or administrator of a deceased employe, is not a violation of the constitutional mandate that the legislature shall not pass any act "which shall enact that any existing

law, or any part thereof, shall be applicable except by inserting it in such act."

4. The act in question is a general, not a special, law, within the meaning of that clause of our constitution which requires the legislature to pass general laws providing for all cases which in its judgment may be provided for by general laws.

On demurrer to declaration.

Before GUMMERE, CHIEF JUSTICE, and Justices TREN-CHARD and MINTURN.

For the demurrant, *Conover English.*

For the plaintiff, *Kinsley Twining.*

The opinion of the court was delivered by

GUMMERE, CHIEF JUSTICE. The defendant demurs to the third count of the plaintiff's declaration. The count is framed for the purpose of bringing the case within the provisions of the act of April 13th, 1909 (*Pamph. L., p.* 114), entitled "An act to extend and regulate the liability of employers for injury or death to employes in certain cases." The averments of the count are in substance as follows: That the defendant was on and prior to November 1st, 1909, in control of a certain line of railroad with its appurtenances over which it was engaged in operating a freight and a passenger train; that the plaintiff's intestate on that day was engaged as an engineer in operating the passenger train for the defendant, whereupon it became the defendant's duty and the defendant was accustomed to use reasonable care to provide him with a reasonably safe place in which to work and a reasonably safe system of signals and warnings, and especially to use reasonable care to prevent a collision between the two trains, but that the defendant failed in its said duties, and on the date aforesaid, on a dark night while it was impossible to see for any great distance, directed the plaintiff's intestate to operate the passenger train along the same track upon which the freight train was proceeding, and while he was so employed placed one of its

operatives in control of giving him warning of the position of the freight train, which the operative failed to do, with the result that no warning being given, while the plaintiff's intestate was relying upon the giving of the customary notice and warning, and was in the exercise of reasonable care, the two trains collided, throwing the plaintiff's intestate from his engine and causing injuries from which he died.

The first ground of demurrer argued on behalf of the defendant is that "the Employers' Liability act has not operated to change the rules of the common law in reference to the negligence of fellow servants." This contention may be disposed of by saying that the assertion is contrary to the fact as will be disclosed by an examination of the provisions of the act hereinafter appearing.

The next ground of demurrer is that the facts recited in the count do not constitute a cause of action against the defendant even if the Employers' Liability act changes the rules of the common law with relation to injuries resulting from the negligence of fellow servants.

The pertinent provisions of the act are contained in sections 1 and 3. and are as follows: "Section 1. Where, after this act takes effect, personal injury or death results to an employe who is himself in the exercise of reasonable care at the time:

"I. By reason of any defect in the condition of the place, ways, works, machinery or plant connected with or used in the business of the employer, which arose from, or had not been discovered or remedied, owing to the negligence of the employer or of any person in the service of the employer, and entrusted by him with the duty of seeing that the place, ways, works, machinery or plant were in proper condition; or

"II. By reason of negligence of any person in the service of the employer entrusted with, and at the time of the injury exercising superintendence, whose sole or principal duty is that of superintendence, or in the absence of such superintendent of any person acting as superintendent, with the authority or consent of such employer; or

"III. By reason of the negligence of any person in the service of the employer who has the charge or control of any

signal, switch, locomotive engine or train upon a railroad; said employe, or in case the injury results in death, the executor or administrator of such deceased employe who has left surviving a husband, wife or next of kin, shall have the same right of compensation and remedies against the employer as if the employe had not been an employe of, nor in the service of the employer, nor engaged in his work. The provisions of law relating to actions for causing death by negligence, so far as the same are consistent with this act, shall apply to an action brought by an executor or administrator of such deceased employe suing under the provisions of this act.

"Section 2   *   *   *

"Section 3. An employe by entering upon or continuing in the service of an employer, shall be presumed to have assumed all risks necessarily incident to his occupation or employment. The necessary risks of the occupation or employment shall, in all cases arising after this act takes effect, be considered as including those risks, and those only, which are inherent in the nature of the business and which remain after the employer has exercised due care in providing for the safety of his employes, and has complied with the laws affecting or regulating such business or occupation for the greater safety of such employes."

The theory of the demurrant is that the third section of the act is in its effect a proviso qualifying and narrowing the scope which otherwise would be required to be given to the language of section 1, paragraph 3, and absolving the employer from liability for injuries received by an employe through the negligence of a fellow servant in cases where the employer has used reasonable care in the selection of such fellow servant. The fallacy of the theory seems to us apparent. In the first place, the fact that the third section is not in form a proviso, but an independent enactment separated from the first section by a provision not dealing at all with matters out of which the master's liability arises, is persuasive that the legislature did not intend by it to curtail the obligations imposed upon the master by the first section. In the second place, the language

used not only is not apt for the accomplishment of the purpose suggested but negatives the idea that such a purpose was intended. It deals only with risks which are *necessarily incident* to the work in which the employe is engaged; that is, as we think, risks which are inherent either in the place where the work is carried on or in the use of the appliances furnished for the doing of it. It does not deal with risks created by the carelessness of a fellow servant, for such risks, although frequently arising, are not *necessary* incidents to the work. In the third place, the first section deals only with those risks which the servant shall *not* be considered to assume, and for which, in case of injury, the master shall respond; while the third section deals only with those which the servant *shall* be considered to assume, and for which, when injury results to him, the master shall not be held responsible.

The next ground of demurrer is that the Employers' Liability act contravenes article IV., section 7, paragraph 4 of the state constitution which requires that "to avoid improper influences which may result from intermixing in one and the same act such things as have no proper relation to each other, every law shall embrace but one object, and that shall be expressed in the title." Counsel first contends that the title (which has already been quoted) is fatally vague and indefinite because of the appearance therein of the words "in certain cases." The omission of these words might well have been considered to indicate a purpose to make the act applicable to all cases in which injury or death should come to a servant while engaged in the work of his master. *Beverly* v. *Waln,* 28 *Vroom* 143, as explained in *Johnson* v. *Asbury Park,* 31 *Id.* 427. In order to prevent so wide a scope from being expressed, it was the part of wisdom, if not of necessity, therefore, to inject into the title words of limitation, and so make it conform to the constitutional mandate above quoted, by expressing the object exploited in the body of the statute, namely, the extension and regulation of the liability of employers not in all cases but only in certain specified ones. This purpose is neither vaguely nor indefinitely expressed by the words used. It is not necessary that the particular cases to which the act is

entitled to apply should be set out in the title. The constitutional provision only requires that the title of the statute shall express its object in a general way, so as to be intelligible to the ordinary reader (*In re Haynes,* 25 *Id.* 24), not that it shall be an index or abstract of the contents thereof. *Moore* v. *Burdett,* 33 *Id.* 163. In the late case of *Attorney-General* v. *McKelvey,* 49 *Id.* 621, certain acts of the legislature, each of which was entitled "An act concerning the government of certain cities in this state and constituting a municipal board," &c., were upheld by the Court of Errors and Appeals as being constitutional, notwithstanding the fact that the title did not disclose what cities were affected by the legislation and an examination of the body of the act was requisite in order to obtain that knowledge. It is true that in the opinion the question of the validity of the title of the several statutes is not referred to, but it can hardly be supposed that such an apparent defect (if it was considered to be a defect) would have escaped the scrutiny of the astute counsel who attacked the statutes, or of the judges who affirmed their constitutionality. The acts then before the court were only three of a mass of statutes having similar titles. If the present contention should be sustained, its effect would be to annul a large portion of the legislation of this state regulating the government of our municipalities, many of which have received judicial approval. This criticism, in our opinion, is not warranted.

It is further argued that the statute infringes the constitutional provision because the object expressed in the title is much narrower than that set forth in the body of the act, in this, that while purporting by its title only to extend and regulate the liability of employers, it at the same time regulates the right of action by employes. But this criticism, as was said by the Court of Errors and Appeals in Manufacturers Land, &c., Co. *v.* Camden, decided at the March term, 1911, fails to differentiate between the object of the act and the means by which that object shall be carried into effect. The former is required to be expressed in the title, the latter is not. The object of the present enactment is the extension and

regulation of the liability of the master. The provisions in the body of the act dealing with the right of action of the employe are merely the means by which the liability of the master is to be enforced; in other words, it is a mere regulation of that liability. Matters which are not foreign to the object of a statute, but are manifestly cognate to it, need not be expressly mentioned in the title. *Warner* v. *Hoagland,* 22 *Vroom* 62; *Boorum* v. *Connelly,* 37 *Id.* 197.

It is also asserted that the statute violates the further provision of article IV., section 7, paragraph 4 of the constitution which prohibits the passing of an act "which shall provide that any existing law, or any part thereof, shall be made or deemed a part of the act, or which shall enact that any existing law, or any part thereof, shall be applicable, except by inserting it in such act." The portion of the act which is said to bring it within the condemnation of this constitutional provision is the latter part of the third subdivision of section 1, which declares that "the provisions of law relating to actions for causing death by negligence, so far as the same are consistent with this act, shall apply to an action brought by an executor or administrator of such deceased employe suing under the provisions of this act;" and the argument is that by this language the provisions of the Death act are engrafted upon the statute. But provisions of law relating to actions for causing death by negligence are not found in our Death act alone. Matters of procedure which apply equally to such actions, as well as to those arising through other causes, are found in our Practice act, in our Evidence act, in our act respecting writs of error, and probably in numerous other statutes. The theory of the demurrant, therefore, if sound, would require that all the provisions contained in these statutes, which regulate the procedure in such actions, must be set out at length. That the constitutional edict has not the scope thus given to it is made plain by the following extract from the opinion of Chief Justice Beasley, in the case of *State* v. *Hancock,* 25 *Vroom* 393, 397: "When the legislature authorizes, as is frequently the case, a new suit to be brought, it thereby either expressly or by implication directs such suit to be conducted in the mode

prescribed by the Practice act, and it would be little short of the *reductio ad absurdum* to maintain that such reference to the general law regulating procedures is forbidden by this constitutional provision, and that, consequently, at such times the greater part of the Practice act must be re-enacted. All egregious constructions of this sort have already been exploded, and it has been intimated that it may be probably a universal test that if the expressions in a given act of reference to antecedent laws may be struck out or eliminated without altering or impairing the effect of the law in which they are found, that such references are harmless and can possess no invalidating force." Applying the test referred to in the citation, the act is manifestly impervious to the attack made upon it; for, if the clause which gives rise to the criticism be excised, the right of the executor or administrator of the deceased employe to receive compensation from the employer for the death of his decedent, and to enforce that right against the employer by resorting to existing remedies and methods of procedure, is not at all affected. We conclude, therefore, that the act cannot be successfully attacked upon this ground.

It is lastly insisted that the act is invalid because it violates the provision of article IV., section 7, paragraph 11 of the constitution, which requires that the legislature shall pass general laws providing for certain cases enumerated in the paragraph, "and for all other cases which, in its judgment, may be provided for by general laws." The point of the insistment is that the act is special and not general; and this is claimed to result from the fact that the act does not apply to all employers of labor, and especially because the third paragraph of section 1 selects railroad companies from the general mass of employers and imposes liability upon them alone.

Assuming the act to be special, it would seem, from the language of the constitution, that the question whether the matters dealt with therein are susceptible of being regulated by a general law, is one for the judgment of the legislature rather than of the courts. It is not necessary, however, to decide this point, for the assumption is not, we think, well

founded; that is to say, we consider the law general, not special.

The power of the legislature under this constitutional provision to pass laws applying only to a class of persons or objects has been declared so often by our courts that a citation of authority would be superfluous. Such laws are general when they embrace all and exclude none whose condition and wants render the legislation equally necessary or appropriate to them. That railroad corporations, and railroad property, may be segregated for the purpose of legislation; that they each constitute a legitimate class for such purpose; and that legislation which deals solely with the one or the other is general, not special, is equally well settled. The Railroad Tax law of 1884, with its various supplements and amendments, which was the subject of consideration in *State Board of Assessors* v. *Central Railroad Co.,* 19 *Vroom* 146, is a conspicuous example of such legislation. So, too, is the Revision of 1903 of "An act concerning railroads." *Pamph. L., p.* 645. This latter act, as it originally stood, and in its present form, contains many provisions which create liability and impose it upon railroad companies. It also contains provisions limiting liability which exists outside the statute, and in this respect makes railroad companies a favored class. And yet it has never even been suggested, so far as we are aware, that these provisions operate to specialize the statute, probably because such a suggestion would be manifestly without substance. Some of the liabilities created by the act are imposed for the benefit of the owners of live stock straying upon the company's tracks; others are imposed for the benefit of passengers; still others are imposed for the benefit of shippers of freight. If the legislature, in addition to the liabilities which it created had seen fit to embody in the act provisions similar to those contained in the statute now under consideration, creating liabilities against railroad corporations for the benefit of their employes, on what theory could such an *addendum* be declared to work a fundamental change in the character of the act and render special that which otherwise would be general? We can conceive of none, and are clear that with such an addi-

tion the act would still remain a general law. And if such a provision, engrafted in the body of the act, would not operate to render it special, a supplement to the act embodying this provision would also be general legislation, for an act and its supplements are to be read together, and if the supplement does not operate to render the statute, as amended, special, it is valid legislation. *Central Railroad Co.* v. *State Board of Assessors*, 46 *Id.* 771. Moreover, if provisions creating liability against railroad companies do not operate to render "An act concerning railroads" special, it must be because such provisions, although made applicable to such class alone are in essence general legislation, for it cannot logically be, we think, that an act which is special in some of its parts is general as a whole. If this be so, then it follows that an independent enactment which imposes liability upon railroad companies for injuries received by employes while engaged in their service is not special in its character.

The Employers' Liability law, however, is not limited in its scope to railroad companies. It applies also to all employers who have a *place* in which their employes perform the tasks allotted to them; to all employers who have works, machinery or a plant connected with or used in the business which they carry on; to all employers who have in their service a person entrusted with the duty of superintendence over the work to be done and over the employes engaged in doing it. But when a law which deals with a certain class of objects is general, it will not be rendered special by an enlargement of the class; or, to put it more accurately, by enlarging its scope so as to embrace another class or other classes. For instance, a law which regulates the internal affairs of all cities of the state and is therefore general (*Hermann* v. *Guttenberg, 34 Vroom* 616), would not be rendered special by enlarging its scope so as to take in all of the towns, or all of the towns and all of the boroughs of the state as well.

We conclude, therefore, that this last contention of the demurrant is also without merit.

The plaintiff is entitled to judgment on the demurrer.