THE STATE, JOSEPH T. SMITH, PROSECUTOR, v. FRED-
ERICK W. WILLETTS ET AL.

Submitted March 23, 1911—Decided June 7, 1911.

The act entitled "An act regulating and controlling the taking, plant-
ing, propagating and cultivating of oysters and clams on lands
lying under the tidal waters of certain portions of the Tuckahoe,
Middle and Great Egg Harbor rivers and Patcong creek, and
other tributaries of the Tuckahoe, Middle and Great Egg Harbor
rivers, &c., &c.," approved April 11th, 1910 (*Pamph. L.*, p. 401)
is constitutional and a lease of oyster lands executed thereunder
is valid.

_____

On *certiorari* removing lease executed by oyster commis-
sioners of Atlantic county.

Before Justices SWAYZE, BERGEN and MINTURN.

For the prosecutor, *Thompson & Cole.*

For the defendants, *Wootton & Hayes.*

The opinion of the court was delivered by

MINTURN, J.   The writ of *certiorari* in this case is intended to review the legality of a lease of certain oyster lands made by the state oyster commission, for the district of Atlantic county, to one Willetts; the lands being located in Great Egg Harbor river in that county. The lease is made under the pro-
visions of an act entitled "An act regulating and controlling the taking, planting, propagating and cultivating of oysters and clams on lands lying under the tidal waters of certain

portions of the Tuckahoe, Middle and Great Egg Harbor rivers and Patcong creek, and other tributaries of the Tuckahoe, Middle and Great Egg Harbor rivers, which portions lie, however, within the boundaries of Atlantic county, in the State of New Jersey," approved April 11th, 1910.

The act is attacked as unconstitutional upon the ground that it violates the constitutional inhibition that "no act shall be passed which shall enact that any existing law, or any part thereof, shall be applicable except by inserting it in such act." Article 4, section 7, paragraph 4.

Section 4 of the legislation under consideration provides in effect that the provisions of the General Oyster laws relating to Atlantic county respecting the giving of notice of intended forfeitures of leases, removal of oysters and clams from forfeited grounds, arrests for violations of the law and kindred matters contained in the act of 1905 (*Pamph. L., p.* 145), shall apply as a remedial procedure "to the proceedings and acts required and permitted to be done by this act when not inconsistent with the provisions hereof."

The section in question manifestly relates to the procedure to be adopted for the enforcement of the provisions of the act *sub judice,* which are intended to prescribe a public policy and method for dealing in Atlantic county with the state's oyster lands. The section might be completely excluded from the act, and the remaining portions of the legislation would nevertheless present a complete enactment in so far as the prescription of a legislative policy and the ordaining of a fundamental method of dealing with the question of the oyster and clam grounds in Atlantic county is concerned.

Such a criterion seems to be the test of constitutionality applied by the adjudications. Mr. Justice Depue, in *Campbell* v. *Board of Pharmacy,* 16 *Vroom* 241, speaking for this court, says:

"An act of the legislature which is complete and perfect in itself, the purpose, meaning and full scope of which are apparent on its face, is valid, notwithstanding these constitutional provisions, although it may operate to amend a prior act by the repeal of the latter *pro tanto* by implication, or may

provide for actions or the means of carrying its provisions into effect by a reference to a course of procedure established by other acts of the legislature. Any other construction would produce most embarrassing results."

Almost ten years later Chief Justice Beasley substantially reiterated this construction of the same constitutional provision in *State* v. *Hancock,* 25 *Vroom* 393. He there characterized the contention under consideration as "little short of the *reductio ad absurdam."* And said: "All egregious constructions of this sort have already been exploded," referring to *Campbell* v. *Board of Pharmacy, ubi supra.*

The subject-matter of this contention received the consideration of this court also in *Hopper* v. *Stack,* 40 *Vroom* 562, with the same result.

We are unable to perceive that it is a matter of legal consequence or importance whether the legislation *sub judice* presents a complete scheme of legislation *ab initio* or an amendment or supplement to an existing law. The vice and danger sought to be prevented in any event by the constitution is as ominous and as elusive in the one case as in the other, and the constitutional paragraph in question suggests no distinction as to the form of the legislation which contains the inhibited provision, and therefore this act is not vulnerable upon that ground.

It is insisted also that the act in question is unconstitutional because its title is not sufficiently comprehensive, in that it deals only with the planting and propagating of oysters, while the body of the act deals with the execution of leases for such lands by the existing commission. We are unable to agree that an act, instituting a public policy regarding the planting and propagating of oysters and clams by leasing the oyster lands of the state for the purpose through an existing oyster commission, and which delegates to such commission a power of regulation and supervision of the system thus inaugurated, is not sufficiently and comprehensively expressed in the title of the act in question. Unless it be necessary to include within the title not only the details of the act and the *modus operandi* for its execution and enforcement, which it concededly is not

(*Bumsted* v. *Govern,* 18 *Vroom* 368), we fail to see how the legislation in question could more specifically manifest the legislative intent in dealing with the regulation of the business of the propagation of oysters and clams. Many instances are recorded in our books where the titles of the acts sustained are much less comprehensive, but where they have been upheld upon the general principle that the plain intent of the act is sufficiently manifested by its generic title, without including an enumeration of its subordinate provisions and requirements. *Easton and Amboy Railroad* v. *Central Railroad,* 23 *Id.* 267; *Onderdonk* v. *Plainfield,* 13 *Id.* 480; *Newark* v. *Mt. Pleasant Cemetery Co.,* 29 *Id.* 168; *State* v. *Corson,* 38 *Id.* 178.

We think also that the act specifically covers the jurisdiction of the commissioners regarding the leasing of lands for the propagation of clams as well as oysters. The title of the act so indicates, and the body of the act deals with the planting and propagation of both species of shell fish, and therefore the objection that the title of the act is broader than its body is without substance. The objection that this legislation should have assumed the form of an amendment or supplement to the prior legislation of 1905, dealing with the same subject-matter, rather than a subsiantive and independent enactment, is entirely a question of legislative propriety, expediency and discretion. *Hopper* v. *Stack, ubi supra.*

The resolution of the commissioners directing the execution of the lease in question will, therefore, be affirmed.