PASQUALE PAPPAGELLO, PLAINTIFF IN ERROR, v. FRANK D. HYDE AND HYDE-McFARLAIN-BURKE COMPANY, DEFENDANTS IN ERROR.

Submitted March 25, 1912—Decided July 1, 1912.

1. At common law, an omission by workmen to use, or a careless use by them of safety appliances furnished by the master, the operation of which is incident to their employment, will not impose liability upon the master for injury to a fellow-servant.
2. If the notice provided for by the second section of "An act to extend and regulate the liability of employers for injury or death to employes in certain cases" (*Pamph. L.* 1909, *p.* 114) fairly apprises the employer of the time, place and cause of injury, it is sufficient.
3. The evidence examined and *held* to make a *prima facie* case of negligence under the said act.

On error to the Supreme Court.

For the plaintiff in error, *Weller & Lichtenstein*.

For the defendants in error, *Lindabury & Faulks*.

The opinion of the court was delivered by

VOORHEES, J. The plaintiff was employed as a laborer by the defendant and was engaged in wheeling stone, cement and concrete to the mixing machine from piles where they had been stored on the first floor of a new structure then in course of erection by the defendant under contract.

After the concrete had been mixed, it was loaded into small trucks or cars which were run to and upon an elevator, and thus were raised to the floor above, where they were run off the elevator to the men engaged on that floor to be used in the work of construction on the second floor. The defendants had constructed about the well-hole, or shaft of the elevator, barriers composed of four boards, one on each side of the opening. When the lift came up with its loaded trucks, one of these boards was removed to allow the trucks to be run off the elevator. The board was then replaced. The same operation was repeated when the elevator was sent down with the empty trucks.

When the plaintiff had been thus employed two days he was, by the foreman, directed to place pieces of boards or lumber on the elevator to be taken to the floor above, and while so engaged, without warning, one of the empty trucks from the floor above fell through the shaft, upon the plaintiff, and severely injured him. For these injuries, this action was brought and resulted in a nonsuit. A single assignment of error to that action is before us here.

The nonsuit was asked upon the ground that the negligence proved, if any, was that of a fellow-servant. The declaration alleged a failure to provide a reasonably safe place for the employes to work in and a reasonably safe system. No one pretended that a proper guard had not been installed by the master in the barriers, nor that if they had been properly used, this would have proved sufficient to prevent the fall of the truck.

It was shown that there was a man at the top of the shaft, whose duty it was to remove the trucks from the elevator and pull them to the place where the concrete was to be used, and in like manner, after the trucks had been dumped, to return

them empty and place them again upon the elevator to be taken below. He also attended to removing the board from the front of the elevator when it came up, and after unloading to putting it in place again. The duty to operate the barriers was connected with and incident to this servant's employment in the general work of the master.

The rule exacting of the master the duty to use reasonable care to keep safe the place where his servants are required to work, is subject to modification, where the work itself gives rise to the danger to be apprehended. Cases of this sort are collected in *Curley* v. *Hoff, 33 Vroom* 758.

In the case, *sub judice,* the danger arose in the course of the erection of a building, and the place of work was of necessity in the very building where the temporary elevator with its shaft, giving rise to the danger, was an essential appliance for the hoisting of the material used in the progress of the work. No evidence of the furnishing of an improper guard was adduced.

The place, so far as the cause of this accident is concerned, had been rendered reasonably safe by the master by the installation of the barriers, capable of preventing the trucks from falling into the well-hole.

· If it can properly be asserted that under these conditions the place became unsafe, it was not by any act of the master, but by the negligent omission of a fellow-servant, in failing properly to use the barriers, the operation of which was incident to the work of construction of the building. It was much as if the lift itself had been carelessly operated and had crushed a workman.

At common law, an omission by workmen to use, or a careless use by them of safety appliances furnished by the master, the operation of which is incident to their employment, will not impose liability upon the master for injury to a fellow-servant. *McLaughlin* v. *Camden Iron Works. 31 Vroom* 557; *Koneski* v. *Delaware, Lackawanna and Western Railroad Co.,* 48 *Id.* 645; *Sofield* v. *Guggenheim Smelting Co., 35 Id.* 605; *Knapp* v. *Voorhees, 49 Id.* 508. The accident, therefore, resulted from a fellow-servant's negligence, and the nonsuit was

proper, so far as the defendant's common law liability was concerned.

But another reason is set up in the brief of the plaintiff in error why there should be a reversal.

A second count was contained in the declaration founded upon "An act to extend and regulate the liability of employers for injury or death to employes in certain cases." *Pamph. L.* 1909, *p.* 114. The pertinent portion of this statute deals with personal injury to an employe, who is in the exercise of reasonable care at the time, where the injury results from—*first,* "any defect in the condition of the place, ways, works, machinery or plant, which defect arose from or had not been discovered or remedied owing to the negligence of the employer or of any person in the service of the employer, and entrusted by him with the duty of seeing to the proper condition; *second,* by reason of negligence of any person in the service of the employer entrusted with and at the time of the injury exercising superintendence, whose sole or principal duty is that of superintendence, or in his absence, by the negligence of any person acting as superintendent."

It remains, therefore, to determine whether there is liability under this statute. The second section of the act provides that no action shall be maintained unless notice, in writing, signed by the person injured, stating the time, place and cause of injury is given to the employer within one hundred and twenty days after the occurrence of the accident, causing the injury or death. The giving of the proper notice is a condition precedent to the maintenance of the action. The time and place of the accident were undoubtedly sufficiently set forth in the notice. The cause is thus stated:

"I was injured by a small iron wagon or truck used to convey concrete, which was negligently allowed to fall from the iron structure or overhead platform of said railway terminal upon me and break my leg while I was standing on the ground engaged in my work loading boards and pieces of wood upon the elevator."

It is argued that, as the act enlarges the common law liability of the master in the class of cases legislated for (*Quigley*

v. *Lehigh Valley Railroad Co.*, 51 *Vroom* 486), the legislature provided for the notice in order that the employer might examine into the circumstances surrounding the accident and secure proper evidence, while still possible to do so to maintain his defence; that to do this effectively the notice should apprise the employer that the statute was claimed to be the basis of his liability and that the particular duty neglected or violated should be stated, as well as the manner in which the neglect or violation occurred. Such notice was, of course, not necessary to enforce a common law liability, and as the statute law, as well as the common law, is presumed to be known by all, the mere fact that a notice of the character above alluded to is given, is sufficient to convey to the master that responsibility for the injury is sought to be sustained under the statute.

Our statute is a substantial redraft of the English Employers' Liability act of 1880, and with reference to it, it has been held not necessary that the notice should be drawn with technical particularity, or to state a cause of action as a pleading at law, but merely such facts as will substantially notify the employer of what has occurred so that he may investigate and be prepared to defend at the trial. *Stone* v. *Hyde*, 9 *Q. B. D.* 78; *Clarkson* v. *Musgrave, Id.* 390. In the latter case, it was observed that "the statute was intended for the use of unlearned persons for whom it meant to provide a cheap and speedy remedy."

And to this effect is the great weight of authority in this country. In the note to *Finneran* v. *Graham,* 198 *Mass.* 385, reprinted in 15 *Am. & Eng. Anno. Cas.* 291, have been collected the cases both English and American on this subject.

If the notice provided for by the act fairly apprises the employer of the time, place and cause of injury, it is sufficient. We think that the notice given to the defendant in this case is sufficiently explicit to enable the plaintiff to maintain his statutory remedy.

It remains finally to consider whether the evidence adduced was sufficient to go to the jury to establish statutory liability under the act.

There was evidence tending to show, and from which the jury might draw the inference, that the man upon the upper floor was charged by the master with the duty of taking the barrier from the well-hole as the car came up on the elevator, and of replacing such barrier when it had been removed from the elevator, that such barrier was intended to prevent the car from rolling into the well-hole, and that when he failed to replace the barrier, after each ascent of the car, and allowed it to remain out of position, from the commencement of the work in the morning to the close of work at the end of the day, it constituted a "defect in the condition of the place, ways, works, machinery or plant, which defect arose from * * * the negligence of * * * a person in the service of the employer and entrusted by him with the duty of seeing to the proper condition."

In *Tate* v. *Latham* (1897), 1 *Q. B.* 502, the facts of the case as they appeared in the court below were thus stated:

"The plaintiff, a lad of seventeen years of age, was employed at the defendant's saw-mills. His duty was to assist a sawyer named Cook, who worked at one of the circular saws. The plaintiff commenced working at Cook's saw-bench in January, 1896. At that date and for three months afterwards the saw was not provided with any fence or guard under the bench. In April, Cook told the plaintiff to make a guard for the saw, because the factory inspector was coming round, and the plaintiff accordingly made one. The guard was movable, as it had to be taken off from time to time for the purpose of removing the sawdust which collected under the bench. On the afternoon of August 17th Cook removed the guard, as it was in his way, and neglected to replace it. Cook was in charge of the bench, and it was his duty to put up the guard. On the following morning, soon after 8 A. M., the plaintiff, whilst helping another boy to clear away a plank, slipped under the bench and, owing to the absence of the guard, his foot was cut off by the revolving saw.

"The plaintiff brought an action under the Employers' Liability act, 1880, alleging that the injury was caused by

(*inter alia*) the defective condition of the ways, works, machinery and plant of the defendants. The county court judge ruled that the defendants having furnished a complete machine, the temporary absence of the guard was not a defect in the condition of the machinery or plant within the meaning of section 1 (1) of the act, and he accordingly dismissed that part of the plaintiff's claim. The plaintiff appealed.

"Lord Esher, M. R., said: · * * * 'A guard had been provided for that purpose, which was movable when it became necessary to remove the sawdust which, in the course of working, collected under the bench. It seems to me clear that if the machine were left without that guard whilst in motion, it might at that time be said to be in a defective condition. * * * The question therefore arises whether there was evidence that Cook was a person entrusted by the defendants with the duty of seeing that the machinery was in proper condition. I think there was. There was evidence that he acted as a person entrusted with that duty, for the evidence was that he told the plaintiff to make a guard for the machine, because the factory inspector was coming round. He therefore acted as if it was his duty to see that the machine had a proper guard, and he was not called by the defendants. It seems to me that there was evidence on which the jury might find that Cook was a person entrusted by the defendants with the duty of seeing that the machinery was in proper condition. The argument for the defendants was that the machine could not be said to be in a defective condition, because a guard had been provided. But I do not think that the machine could rightly be said to be in a proper condition merely because there was a guard provided which could be fitted to it, if that guard was not so fitted whilst it was in motion. The evidence was that Cook, being the person whose duty it was to put the guard on, he had left it off for some considerable time. It was proved that on the previous day he had removed it, because it was in his way, and that on the day in question it was not replaced.' "

It was held that there was evidence for the jury that the machine was in a defective condition.

We deem this a proper and reasonable construction to be applied to our statute, in view of the evident remedial purpose of its enactment.

Because the evidence above alluded to was in the case, and because the learned trial judge refused to permit the jury to consider it, the judgment of nonsuit must be reversed to the end that a *venire de novo* issue.

*For affirmance*—None.

*For reversal*—The Chief Justice, Garrison, Swayze, Trenchard, Parker, Bergen, Voorhees, Minturn, Kalisch. Bogert, Vredenburgh, Vroom, Congdon, White, JJ. 14.