*In the ma'ter of the Petition of* DENNIS DUMFORD *for a Writ of Habeas Corpus.*

**No. 608.**

CONSTITUTIONAL LAW — *Power of Managers Industrial Reformatory.* Section 14 of chapter 134, General Statutes of 1897, whereby it is attempted to confer power upon the board of managers of the state industrial reformatory to transfer inmates of that institution to the penitentiary, is unconstitutional and void.

Original proceeding in *habeas corpus*. Opinion filed May 3, 1898. Writ granted.

THE petitioner, Dennis Dumford, alleges that he is unlawfully restrained of his liberty at the state penitentiary, at Lansing, by Harry Landis, warden of said penitentiary. The petition, as well as the return of the warden to the writ, discloses that the petitioner was charged by information in the district court of Shawnee county with the offense of grand larceny, and that he plead guilty. On the 2d day of January, 1896, on his plea of guilty, the court found that he was between sixteen and twenty-five years of age, that it was his first offense, and that he was a proper person to be sent to the Kansas state industrial reformatory; and sentenced him to be confined therein for such crime of grand larceny, under and by virtue of the provisions of chapter 200, Laws of 1895. On the 7th day of August, 1897, the board of managers of the reformatory passed a resolution declaring that Dennis Dumford was incorrigible and directing the superintendent to transfer the petitioner from the reformatory to the state penitentiary, at Lansing, to the warden, to be dealt with according to law. This resolution is the authority upon which the warden returns

*In re* Dumford.

that he holds the petitioner in his custody in the penitentiary.

By section 14 of chapter 134, General Statutes of 1897, the legislature attempted to confer power upon the board of managers to transfer inmates from the state reformatory to the penitentiary when such inmates were apparently incorrigible or when their presence in the reformatory was seriously detrimental to the interests of the institution.

*L. C. Boyle,* for The State.

*J. S. Ensminger,* for petitioner.

The opinion of the court was delivered by

MAHAN, P. J. : It is contended by counsel for petitioner that the sentence of the district court committing to the state reformatory is void for two reasons : (1) That the petitioner was under the age of fifteen years at the time of the sentence ; and, (2) because the sentence is indefinite in duration. Section 11 of chapter 134, General Statutes of 1897, expressly provides that the sentence shall not fix a limit to its duration. Upon the first proposition, evidence was tendered as to the age of the petitioner at the time he was sentenced. We deem it unnecessary to enter upon a consideration of either of these objections, as the warden does not pretend to be holding the petitioner upon the sentence of the district court committing the prisoner to the state reformatory, but upon the resolution of the board of managers. But we will say that we are of the opinion that neither of the contentions can be sustained. The finding and judgment of the court are conclusive upon the first, and the second objection is covered by the statute.

The important question, and the question upon

which the application must be decided, is, Had the legislature power, as representatives of the people of the state in exercising their prerogatives of sovereignty, to authorize the board of managers to commit the defendant to the penitentiary? We understand the law to have been always that a citizen could not be deprived of his liberty without due process of law. The people of the state of Kansas, in conjunction with the other states, adopted the fourteenth amendment to the constitution of the United States, by which this principle of law was expressly enunciated, and whereby the state of Kansas entered into a solemn compact with the other states of the union not to deprive any person of life, liberty or property without due process of law. The only due process of law by which any person can be committed to the penitentiary is the sentence of a court of record, upon a verdict or plea of guilty to an indictment or information duly presented, charging such person with an offense, upon conviction of which such sentence might under the statute lawfully be imposed. This law so adopted by the people is a restraint upon the power of the legislature, and is of higher authority than any act that could be by them adopted. Hence, if a conflict occurs between the act of the legislature and this primary law, the act of the legisture must give way. If we should hold that the legislature had the power to confer upon an executive board authority to commit a person to the penitentiary, it would follow logically that it must be held that it could confer a like authority upon a board of county commissioners to transfer a prisoner committed to the county jail upon certain conditions fixed by it, or even that the sheriff might be authorized so to do. This authority of the board of managers conferred by the legislature is in its nature essentially

*In re* Dumford.

judicial. The legislature cannot exercise any judicial powers, nor can it confer judicial powers upon an executive officer.

It is contended on behalf of the state that the transfer of a prisoner by the board of managers is disciplinary; that it is transferring a prisoner from one branch of the penitentiary to another. This contention cannot be sustained. A commitment to the penitentiary involves an infamy to the person that does not attach to him by reason of a sentence to the reformatory. The supreme court, in *Miller v. The State*, 2 Kan. 175, says that the term "penitentiary" means a place of punishment in which convicts are sentenced to confinement and hard labor. A commitment to the state industrial reformatory is not a sentence to imprisonment with hard labor. A sentence and commitment to the penitentiary deprives a person of his civil rights. Does such commitment to the state industrial reformatory work a deprivation of civil rights?

The sentence of the district court does not authorize the commitment of the prisoner to the penitentiary. The board of managers could not, for the reasons above stated, by resolution or other act of theirs, lawfully commit the petitioner to the penitentiary.

The resolution of the board, set out it the return of the warden to the writ, constitutes no justification for the detention of the petitioner in the penitentiary, and it follows that he must be discharged from the warden's custody.