*In re* EDWARD MURPHY.
No. 11,923.   (63 Pac. 428.)

1. REFORMATORY—*Right to Transfer to Penitentiary.* Under the authority conferred by section 14 of chapter 134, General Statutes of 1897, the board of managers of the industrial reformatory, at Hutchinson, may lawfully transfer an incorrigible prisoner from that institution to the penitentiary.

2. ——— *Not a Judicial Act.* The exercise of such power is not a judicial act.

Original proceeding in *habeas corpus.* Opinion filed January 5, 1901.   Writ denied.

*O. C. Phillips,* for petitioner.

*A. A. Godard,* attorney-general, and *J. S. West,* for respondent.

The opinion of the court was delivered by

SMITH, J.: This application is based on the following agreed facts: The petitioner was duly convicted of grand larceny in the district court of Leavenworth county, Kansas; on the 2d day of February, 1899, he was sentenced by said court to the state industrial reformatory, at Hutchinson, in accordance with section 11 of chapter 134, General Statutes of 1897 (Gen.

Stat. 1899, § 6781). Thereafter, on the 14th day of September, 1900, the board of managers of said reformatory, in accordance with section 14 of chapter 134, General Statutes of 1897, made the following order :

"At a meeting of the board of managers of the Kansas State Industrial Reformatory held at said reformatory on the 14th day of September, 1900, the following resolution was adopted :

"WHEREAS, One Edward Murphy, of Leavenworth, Kan., was sentenced to this institution on the 2d day of February, 1899, by the district court of said county, for the crime of grand larceny ; and

"WHEREAS, The said Edward Murphy is apparently incorrigible, and the board of managers, believing the presence of the said Murphy in this reformatory to be seriously detrimental to the welfare of the institution, have this day, and in accordance with section 14 of chapter 134 of the General Statutes of 1897, ordered the superintendent, J. S. Simmons, to take the said Edward Murphy to the penitentiary, at Lansing, Kan., and turn him over to the warden, there to be dealt with according to law.

"IN WITNESS WHEREOF, I, J. W. Lingenfelter, secretary of said board, have hereunto set my hand and affixed the seal of said reformatory, at Hutchinson, Kan., this 14th day of September, 1900.

[SEAL.]     J. W. LINGENFELTER, *Secretary.*"

Thereafter the said J. S. Simmons, superintendent of the reformatory, by virtue of the aforesaid order, took the petitioner to the Kansas State Penitentiary, at Lansing, and turned him over to J. B. Tomlinson, the warden. He is now there confined under the charge of said J. B. Tomlinson.

The prisoner must be denied a discharge from his imprisonment. When he committed the felony for which he was convicted, and when he was tried and sentenced therefor, the laws in force regulating his

punishment, and the terms and conditions of the same, entered into and became a part of the record of the sentence. (*The State v. Page*, 60 Kan. 664, 57 Pac. 514.) The court, in the first instance, might legally have sentenced the prisoner to the punishment he is now enduring, and would probably have done so had his incorrigibility appeared as it did to the board of managers of the reformatory. Under the decision in *The State v. Clark*, 60 Kan. 450, 56 Pac. 767, a person convicted of grand larceny and sentenced to the reformatory is deemed infamous to the same degree as if he had been sentenced to the penitentiary. In *The State v. Page*, supra, the court said:

"It is undeniably true that the sole power to provide for the punishment of offenders belongs to the legislature. It alone has the power to define offenses and affix punishments. Its authority in these respects is exclusive and supreme. Courts are empowered only to ascertain whether an offense has been committed, and, if so, to assess punishment, within the terms of the law, for its commission. It cannot be doubted that the legislature, in virtue of its exclusive and sovereign authority over such matters, may affix conditions to the punishment it ordains, and among other things may set to it limits of duration, terminable upon conditions. To these conditions the courts in assessing punishment must conform. Into every sentence of conviction the terms and conditions which beforehand the legislature had prescribed enter as much as though they were written into and made a formal part of the record of sentence. Into the before-quoted sentence of conviction the law wrote, as provisos and as constituent parts of it, sections 11 and 20 of the act establishing the state industrial reformatory. (*Miller v. The State*, 149 Ind. 607, 49 N. E. 894, 40 L. R. A. 109.) It is not, therefore, an interference with judicial authority, nor an assumption of judicial power, for the supervisors of penal institutions to administer the very conditions of punishment or clemency which

the law prescribed and itself wrote into the judge's sentence.   Where conditions of punishment are beforehand prescribed, and form constituent parts of the sentence of conviction, it is not an assumption of judicial power for an administrative officer, acting within the law and the terms of the sentence, to take upon himself the task of ascertaining whether the conditions have been observed.''

This court has already held that the reformatory is a penal institution.   The order made by the board was merely done in administration of such institution, and the transfer was an act which was within the contemplation of the law under which the prisoner was sentenced, and inhered in and became a part of the sentence.

The law authorizes the board of managers of the reformatory to employ prisoners sent there at ''such labor as will best contribute to their support and reformation.''   In this case the prisoner could have been detained in the reformatory during the maximum time to which he might have been sentenced to the penitentiary, and required to work during the whole of that period.   His situation in the penitentiary differs little from what it would have been in the reformatory, except that in the latter discretion is lodged in the board of managers to discharge him before the expiration of the maximum time to which he might have been sentenced to the penitentiary.

It will be noted that, under the last clause of section 14 of said chapter 134, General Statutes of 1897, it is provided that ''such managers may by written requisition require the return to the reformatory of any person who has been transferred.''   It would seem from this that the act of transferring the prisoner to the penitentiary was merely disciplinary in character.   It will be presumed that when the pris-

oner becomes tractable the board of managers, not having lost control over him, will require his return to the reformatory.

A claim of illegality in his present detention cannot be founded on the fact that if he had remained in the reformatory the discretion of its managers might have been exercised to reduce the period of his imprisonment below the maximum. The happening of such contingency is speculative and uncertain. The argument that the board of managers, in ordering his transfer to the penitentiary, exercised judicial powers, is not sound. The point made was decided against the petitioner's contention in *The State v. Page,* supra. The case of *In re Dumford,* 7 Kan. App. 89, 53 Pac. 92, relied on by counsel for the prisoner, was decided before the case of *The State v. Clark,* supra, and proceeded on the theory that a sentence to and confinement in the reformatory did not render the prisoner infamous.

The writ will be denied and the prisoner remanded.