## ROBERT STAGWAY v. WILLIAM RIKER, JR., ET AL.

Argued November 7, 1912—Decided March 18, 1913.

1. Section twelve of the act entitled "An act relating to the management of the New Jersey reformatory," approved March 21st, 1901, empowering the commissioners of the reformatory, with the consent of the governor, to transfer to the prison any prisoner committed to the reformatory, is not violative of the constitutional inhibition requiring acts of the legislature to contain but one object, which shall be expressed in the title.

2. Section 12 of the said act is not violative of the requirement of the fourteenth amendment of the federal constitution, in that the constitutional mandate is not intended to apply to a mere disciplinary requirement, of a reformatory board, imposed in the interest of the inmates of the institution, as well as for the public benefit under the general policy of the law regulating such institutions.

---

On *certiorari* removing resolution of the commissioners of the New Jersey reformatory.

Before Justices TRENCHARD and MINTURN.

For the prosecutor, *Theodore Strong.*

*Contra,* *Edmund Wilson,* attorney-general.

The opinion of the court was delivered by

MINTURN, J. The prosecutor, an inmate of the state reformatory, under an indeterminate sentence imposed by the Court of General Sessions of the county of Middlesex, upon an indictment for highway robbery, was ordered by the com-

missioners of the reformatory by resolution to be transferred to the state prison, where he was received on the 18th of March, 1911, and where he is now detained serving out the remainder of his term.

The legality of his transfer to the prison was reviewed by Mr. Justice Voorhees upon a writ of *habeas corpus,* with the result that the prosecutor's discharge was refused. A writ of *certiorari,* however, was then allowed to review the legality of the prosecutor's transfer to the prison.

The prosecutor rest his claim in effect upon two reasons— *first,* that the title of the act under the authority of which this order of removal was made is insufficient, thereby rendering the act unconstitutional.

The act is entitled "An act relating to the management of the New Jersey reformatory." *Pamph. L.* 1901, *p.* 231. The twelfth section conferring the power of removal reads as follows: "12. The commissioners, with the consent of the governor, may transfer to the state prison any prisoner committed to the reformatory; they may, with like consent, require the return to the reformatory of any prisoner who may have been transferred from there to the state prison; every prisoner so transferred to the state prison shall be held therein, subject to all the rules and the discipline of such prison for the full maximum term provided by law, less commutation earned for good behavior, unless returned to the reformatory as herein provided."

The insistence is that the title of the act is not sufficiently broad to include the power thus vested by the twelfth section in the commissioners, and exercised by them in this instance. It is said that since the title contains no reference to the power to transfer to the prison; and since the section in effect relates as much to the management of the prison, as it does to the management of the reformatory, without indicating that fact by any collocation of words from which this legislative purpose may be reasonably inferred, the section in question is thereby rendered nugatory.

We think the words "management of the New Jersey reformatory" are sufficiently comprehensive to convey to the

mind, a legislative intent to deal with the general subject of the reformatory in all of its details of management and control, and that any one interested in the subject would by force of this legislative notice have his mind directed to the fact that by this measure the legislature proposed to deal with any conceivable practical phase of reformatory management and control.

The legislative inhibition requiring an act to express its object in its title was intended to subserve that practical purpose, and in this instance we are unable to perceive that the legislature has failed to comply with the constitutional mandate.

Under the word "management" as we have intimated, the general administration, including the discipline of the institution were proper subjects for legislative action. "Words," says Blackstone, "are generally to be understood in their usual and most known signification; not so much regarding the propriety of grammar, as their general and popular use." 1 *Bl.* 59.

The general and usual signification of the word "management" as defined by Webster is, "conduct," "administration," "guidance," "control," "judicious use of means to accomplish an end." Measured by these definitions we think the title of the act *sub judice* sufficiently comprehensive to inform the public and the legislative members, that the discipline of the inmates of the reformatory was or might be the subject-matter of the act, and that result under our decisions is made the test of compliance with the requirement of the organic law. *Ryno* v. *State,* 29 *Vroom* 239; *Falkner* v. *Durand,* 25 *Id.* 410; *Rader* v. *Township of Union,* 10 *Id.* 512.

Acts with titles much less specific than the one in question have been held to comply with the legislative mandate. *Coward* v. *North Plainfield,* 34 *Vroom* 61; *State* v. *Twining,* 44 *Id.* 683; *State* v. *Corson,* 38 *Id.* 178; *Seaside Realty Co.* v. *Atlantic City,* 45 *Id.* 178.

If the title be expressive of the legislative intent, even though the language be of a generic character, but sufficiently

plain and comprehensive to convey the general purpose or scheme of legislation, it is immaterial whether it fail to contain the details and *minutiæ* of legislative expression, by which the general purpose is to be effectuated. *Easton Railroad Co.* v. *Central Railroad Co.,* 23 *Vroom* 267; *Coward* v. *North Plainfield,* 34 *Id.* 61; *State Board of Health* v. *Diamond Paper Co.,* 18 *Dick. Ch. Rep.* 111; *Smith* v. *Willetts,* 52 *Vroom* 372.

It is also urged, that the transfer of the prosecutor under the resolution in question was accomplished without due process of law, in that without notice or further hearing an indeterminate sentence in the reformatory was by this transfer transmuted into a determinate sentence in the state prison. If it be intended to invoke the provisions of the fourteenth amendment of the federal constitution, upon the ground that the effect of the order of the commissioners of the reformatory was to subject the prosecutor to cruel and inhuman punishment, as was suggested upon the argument, it must suffice to say that the provisions of that amendment are not intended to apply to such an accusation. *O'Neil* v. *Vermont,* 144 *U. S.* 323.

If it be insisted that the commissioners deprived him of the benefit of "due process" by ordering his transfer, without a hearing, from one state institution to another, for what was by them considered disciplinary purposes, we are unable to perceive the force or logic of the argument. "Due process" has been designed since its inception as a fundamental principle of constitutional law for the protection of the life, liberty and property of the citizen. *Allgeyer* v. *Louisiana,* 165 *U. S.* 578.

The prosecutor was, as far as the record shows, removed upon the resolution of the commissioners of the reformatory, without any particular reason being given for the removal; but since section 12 of the act allowed such removal, we must assume in the absence of any evidence upon the subject, that it was done for proper, or at least for disciplinary purposes, and in furtherance of the general object and public policy which are presumed to inhere in the establishment of

reformatories, for the correction of incipient vice, and the upbuilding and reforming of wayward, but undeveloped characters possessing a manifest tendency to criminality. This phase of the question was dealt with by this court in an opinion by Mr. Justice Swayze in *In re Marlow, 46 Vroom* 400.

Whether under such circumstances continuance of the comparatively mild restraint of the reformatory, or a ticket of leave upon parole, or confinement in a hospital for the sick, or in an asylum for the insane, or in the state prison, as in the case at bar, shall be the disciplinary means to be adopted in aid of the discipline which is intended to reform the criminal tendency, are questions, the consideration of which the legislature has reposed in a duly organized commission, entrusted with this beneficent public work.

We cannot say, therefore, from an inspection of the mere record here, that what these commissioners have ordered done was of such an unusual character in its application to this prosecutor, as to be subject to the charge of cruel and unusual punishment, or to have been done in violation of the spirit of the due process clause of the federal constitution. 34 *Cyc.* 1011, and cases cited.

The phrase "due process of law" is intended to guaranty to a defendant a fair and impartial trial, and we are not aware of any interpretation or construction of it that would extend its application to the method of punishment adopted by the administrative officers of the law in the execution of a sentence, after a trial in due course, which stands unchallenged for illegality.

In consonance with this construction, statutes not unlike that *sub judice,* providing for the confinement of young criminals in homes of correction or reformatories, in which "education for good" is made a condition for their restraint; and statutes allowing indeterminate sentences; and statutes varying the degree of restraint with the purpose of adapting punishment to the good of particular classes, have been held valid and constitutional, as a proper exercise of the power of

the state as *parens patriæ* for the regulation of the welfare of the individual, whose liberty may be thus restrained, as well as for the protection of the community at large, under a clearly prescribed public policy of educational and reformatory discipline. *Simon* v. *Craft*, 182 *U. S.* 436; *Milwaukee Industrial School* v. *Milwaukee Co.*, 40 *Wis.* 328; *Murphy* v. *Massachusetts*, 177 *U. S.* 155.

We have concluded, therefore, that the writ of *certiorari* should be dismissed.