## HUKOVEH v. ALSTON.
### (No. 908; Decided June 26th, 1917; 165 Pac. 988.)

HABEAS CORPUS—CRIMINAL LAW—SENTENCE—STATUTORY CONSTRUC-
TION.

1. The discretion conferred upon trial courts by Compiled Stat-
utes, 1910, Section 540, to sentence first offenders between
the ages of sixteen and twenty-five years, convicted of
felony, to imprisonment in the state reformatory, instead
of the penitentiary, was not taken away by Laws 1913,
Chapter 63, Section 8, it being intended by the act of 1913
to substitute the Wyoming industrial institute after its
establishment and completion for such reformatory, as the
State Board of Charities and Reform may have theretofore
provided for such purpose by contract made under author-
ity of said Section 540. The words in the act of 1913
"under the provisions of said chapter" referred to Section
540, Compiled Statutes, 1910, not only as describing the
offender, but as prescribing the rule for imposing the sent-
ence, and these provisions include the element of judicial
discretion in directing the place of confinement, the pro-
visions of Section 540 being adopted as part of the later
statute, with the same effect as if bodily incorporated
therein.

ORIGINAL proceedings of habeas corpus by Hukoveh
against Felix Alston, as warden of said penitentiary.

The material facts are stated in the opinion.

*Ivan S. Jones,* for plaintiff.

It is conceded that plaintiff was of the age of eighteen
years and one month at the time of his conviction. He
should have been sentenced to the Wyoming Industrial In-
stitute and it was error to sentence him to serve a term in
the penitentiary. (Sec. 540, Ch. 44, Comp. Stats. 1910;
Sec. 8, Ch. 63, Laws 1913.) Every offender includes every
person of the class mentioned. (Geary v. Parker, 47 S. W.
238, 239; Washington v. State, 17 Wis. 147, 148.) "Ev-
ery" means all the separate individuals which constitute the
whole. (Purdy v. People, 4 Hill, 384; Blackburn v. State,
36 N. E. 18, 21.) The words "shall be sentenced to impris-
onment in the Wyoming Industrial Institute," used in the

Laws of 1913, are mandatory, the word "shall" having a compulsory meaning. (State v. Meeker, 105 N. E. 906, 907, citing: Morrison v. State, 105 N. E. 113; Robertson v. State, 10 N. E. 582; Board v. Bank, 89 N. E. 904; Ex parte Jordan, 24 L. Ed. 123; 35 Cyc. 1451; Re. Smith, 97 N. Y. 577; Petition of Douglas, 46 N. Y. 42, 44; Madderon v. Chicago, 62 N. E. 846; Buck v. Danzenbacker, 37 N. J. Law, 359, 361; Ex parte Simonton, 9 Port. 290, 394, 33 Am. D. 320.) A statute is mandatory when the prescribed mode of action is of the essence of the thing to be accomplished. (Gallup v. Smith, 12 L. R. A. 353; Rock Island v. U. S., 18 L. Ed. 422.) When a specific enumeration concludes with a general term it is held to be limited to things of the same kind. (People v. Dolan, 39 Pac. 754.) "Shall" is made interchangeable with "may" in the criminal code. (Sec. 6028.) But does not extend to Chapter 44, or the Law of 1913. The Law of 1913 repeals all acts in conflict. It is generally safe to reject an unnatural interpretation. (Ardmore Coal Co. v. Bevil, 61 Fed. 757; Shulthis v. MacDougal, 162 Fed. 331, 340; People v. Deyo, 74 N. E. 430, 431.) Unless there is adequate ground for the conclusion, nothing is to be added to or subtracted from statutory words of general scope and comprehensiveness. (Kinkalman v. Gibbon, 84 N. E. 985; Pittsburg v. Kalchthaler, 7 Atl. 921, 114 Pa. 547, 552; Flowing Wells Co. v. Culin, 95 Pac. 111.) It is presumed that the Legislature acted from pure motives. (State v. Harden, 58 S. E. 717.) The trial court cannot be familiar with the character of the convict and the Legislature therefore placed the discretion entirely with the Board of Charities and Reform. The purpose of the Law of 1913 is to relieve immature offenders from infamous punishment, until it has been determined that he is not subject to discipline. That construction is preferred which is most favorable to defendant. (Brooks v. The People, 24 Pac. 553; Com. v. Martin, 17 Mass. 359; Gibson v. State, 38 Ga. 573.) Criminal statutes are construed strictly. (Hill v. State, 53 Ga. 125, 127; State v. Chapman, 5 Pac. 768, 769; Remington v. State, 1 Ore. 281; Lowell v. State, 23 Ia. 304;

Gibson v. State, 38 Ga. 571.) Courts cannot supply omissions in defective statutes. (36 Cyc. 1113.) The sentence was unauthorized. (Bandy v. Hehn, Warden, 10 Wyo. 168.) Habeas corpus is the proper remedy. (Ex parte Lange, 18 Wall. 176, 21 L. Ed. 879; Re. Cica, 51 L. R. A. N. S. 373; Re. Fanton, 55 Neb. 703, 70 Am. St. 418, 76 N. W. 447; Re. Tani, 91 Pac. 137, 13 L. R. A. N. S. 518; Ex parte Page, 49 Mo. 291; Re. Allen, 139 Mich. 712, 103 N. W. 209; Ex parte Cox, 32 Pac. 197; Ex parte MacDonald, 146 Pac. 942; State v. District Court, 89 Pac. 63; Re. Downey, 78 Pac. 772; Re. Farrell, 92 Pac. 785; Hovey v. Sheffner, 16 Wyo. 254.) The words "every offender" designate a class and take away the discretion of the trial court, placing the discretion in the hands of the Board of Charities and Reform.

*D. A. Preston,* Attorney General, for the State.

The question presented is whether the court erred in sentencing the plaintiff to the penitentiary instead of to the Wyoming Industrial Institute. Chapter 44, Comp. Stats., authorizes courts to sentence certain persons to a reform institution in some other state. Chapter 206, Comp. Stats., relates to juvenile delinquents. Chapter 107, Laws 1911, provides for the establishment of a state industrial institute. Chapter 63, Laws 1913, relating to state institutes, provides that the class of persons referred to in Section 540, Comp. Stats., may, in the discretion of the court, be sentenced to the state institute in accordance with said section, the section in question limiting said class of persons to those between the ages of sixteen and twenty-five years convicted of felonies. Section 3127, Comp. Stats., relates to minors under the age of sixteen convicted of any offense except homicide and provides for their care and training. In the enactment of the several provisions of the statutes relating to juvenile delinquents and minor convicts, it was the purpose of the lawmakers that those to be imprisoned and committed in the state reformatory should be those under sixteen years of age convicted of any offense, except homicide, those be-

tween the ages of ten and sixteen years found incorrigible
and vicious and those between the ages of sixteen and twen-
ty-five convicted of felony, who in the judgment of the trial
court should be sent to said reformatory. The element of
judicial discretion undoubtedly controls. The object of
courts in construing statutes is to ascertain the true intent
and meaning of the Legislature. (In re. Moore, 4 Wyo. 98.)
The contention of counsel for plaintiff as to the interpreta-
tion of the word "shall" as used in the statute is not in ac-
cord with the evident intention of the statute itself. It was
clearly the intention that the reformatory should be desig-
nated as the place of confinement of convicts for whom
there was hope of reform. It was not intended that degen-
erates beyond hope of reformation convicted of heinous
crimes should be sentenced to imprisonment at the institute,
if the court in its discretion believed that they should be
sent to the penitentiary. Flexibility of this record was pro-
vided in order to do justice to a convict himself, inmates al-
ready at the reformatory and to establish order in general.

POTTER, CHIEF JUSTICE.

This is a habeas corpus proceeding, the plaintiff, John
Hukoveh, alleging that he is illegally restrained of his lib-
erty by imprisonment in the state penitentiary. Upon an
information charging him with the crime of robbery, and
his plea of guilty, he was sentenced by the District Court in
Lincoln County on February 15, 1917, to imprisonment in
the state penitentiary for the term of not less than four nor
more than six years; and under a mittimus issued out of
said court reciting the judgment and directing the sheriff to
take and deliver the plaintiff to said penitentiary and the
warden and other officers thereof, to keep and imprison him
therein for the term of said sentence, he was delivered to
and received at the penitentiary and is now there confined.
The petition alleges these facts, and also that the charge and
sentence was for a first offense, and that the plaintiff at the
time of the sentence was under the age of twenty-five years,
viz.: eighteen years. The facts are not in dispute, but the

answer denies that the plaintiff's imprisonment is unlawful.

The contention on behalf of the plaintiff is that the court was without authority to sentence him to imprisonment in the penitentiary, and that its only authority to sentence him to imprisonment was to require that he be imprisoned in the. Wyoming Industrial Institute. That contention is based upon Section 540, Compiled Statutes, 1910, and Section 8 of Chapter 63 of the Laws of 1913. Section 540, Compiled Statutes of 1910, is the first section of Chapter 44 of that compilation and was enacted as the first section of Chapter 90 of the Laws of 1909. It reads as follows:

"Any person between the ages of 16 and 25 years, convicted of a felony, who has not theretofore been convicted of a crime punishable by imprisonment in the state penitentiary, may, in the discretion of the trial court, be sentenced to imprisonment in the reformatory of the state, with which the State Board of Charities and Reform of this state may make arrangements for the care, custody and maintenance of such convict, as hereinafter provided, such person to be confined in such reformatory under the provisions of the law relating to that institution, and under the rules and regulations governing the same, to be treated, cared for, kept and confined in such reformatory in the same manner and for the same period of time, not exceeding the maximum term provided by the laws of this state for the offense of which the offender was convicted, as are convicts sentenced to such institution by the courts of the state in which such institution is situate and located. In imposing sentence in all such cases the courts of this state shall not fix or limit the duration of the period of confinement in such reformatory further than that it shall not in any event exceed the maximum term provided by the laws of this state for the offense of which the prisoner was convicted; Provided, however, That the Governor of this state may upon the recommendation of the superintendent, superior officer or governing body of any such reformatory grant to such convict a parole or discharge from said reformatory in accordance

with the laws of the state in which the same is situated or the rules of such institution."

The title of the original act was: "An Act authorizing the District Court of this state, in sentencing certain persons convicted of felonies, to sentence them to a reform institution of some other state, and authorizing and empowering the State Board of Charities and Reform to make arrangements for the care, custody and maintenance of such persons so sentenced." The other sections of the Act are included in the same order in Chapter 44 of the Compiled Statutes aforesaid, except the last section of the Act, which declared that it should take effect and be in force from and after July 1, 1909, and they complete the chapter. Those sections provide for the parole and discharge of a person confined in the reformatory; that the Board of Charities and Reform may contract with the authorities of any other state for the care, custody and maintenance of persons sentenced, under the provisions of the chapter, to the reformatory of another state; and authorize the transfer from the penitentiary to said reformatory, on the order of the Governor when recommended by the board, of any person between 16 and 25 years of age thereafter sentenced to imprisonment in the penitentiary for more than one year, if the Governor is satisfied that the public interest and the welfare of the convict will be subserved thereby. Provision had previously been made by statute for committing to a reform institution of another state juvenile delinquents under the age of 16 years, and statutes to that effect had been in force since 1884, though an exception was made where the conviction was for homicide, and originally where the conviction was either for homicide, arson or rape. (Rev. Stat. 1887, Secs. 2332-2336; Laws 1888, Ch. 57; Rev. Stat. 1899, Secs. 4930-4934; Comp. Stat. 1910, Secs. 3127-3131.) And provision was also made in 1907 for the parole and discharge of juvenile delinquents so committed to an institution of another state. (Comp. Stat. 1910, Secs. 3132-3135.)

Provision having been made by a statute enacted in 1911 for establishing the Wyoming Industrial Institute, and it

having been located at Worland by a vote of the people, as provided by the Act, another Act was passed in 1913, published as Chapter 63 of the Laws of 1913, making further provisions for that institution, and containing the provision particularly relied on in support of the contention that plaintiff's sentence and his imprisonment in the penitentiary thereunder is unlawful. That provision is found in Section 8 of the Act, which reads as follows:

"Every offender described in Chapter 44, Wyoming Compiled Statutes, 1910, who shall have been convicted, shall be sentenced to imprisonment in the Wyoming Industrial Institute under the provisions of said chapter, and such other juvenile delinquent as in the discretion of the State Board of Charities and Reform should not be confined elsewhere, shall be confined in said Wyoming Industrial Institute. The term of such imprisonment of any person so convicted and sentenced, shall be terminated by the State Board of Charities and Reform, and (as) authorized by this Act. But such imprisonment shall not exceed the maximum term provided by law for the crime for which the prisoner is convicted and sentenced."

It is argued by counsel for plaintiff that the above quoted provision of the 1913 statute for sentencing the offenders mentioned to imprisonment in the Wyoming Industrial Institute is to be construed as requiring that every such offender shall be sentenced to imprisonment only in said institute. But we do not so understand or construe that provision, when read, as it must be, in connection with the former statute to which it refers. On the contrary, we think the correct construction of the provision is, that whenever an offender described in the statute referred to—Chapter 44, Compiled Statutes—is sentenced to imprisonment in a reformatory of the state instead of the penitentiary, that sentence shall be for imprisonment in the Wyoming Industrial Institute. That would be our conclusion if based alone upon the language of the statute, but a consideration of the history and purpose of the legislation and other statutory

provisions bearing on the question leads inevitably to the same conclusion.

The provision relied on is that a convicted offender described in Chapter 44, Compiled Statutes, shall be sentenced to the Industrial Institute *under the provisions of said chapter.*  Having thus referred to the other statute not only as describing the offender, but as prescribing the rule for imposing the sentence, its provisions in those respects were adopted as part of the later statute "with the same effect as if they had been bodily incorporated therein" (Edwards v. Cheyenne, 19 Wyo. 110, 137, 114 Pac. 677, 122 Pac. 900), except as modified by naming the place of imprisonment, which was intended, as we think and shall endeavor further to show, as a substitute for the reformatory mentioned in the other statute, viz.: a reformatory with which the State Board of Charities and Reform may arrange for the care, custody and maintenance of the convict, and which might be located in another state.  It will be observed that the provisions of the other statute (Comp. Stat., Sec. 540) thus referred to are, that any person between the ages of 16 and 25 years, convicted of a felony, and not previously convicted of a crime punishable by imprisonment in the penitentiary *may* be sentenced, *in the discretion of the trial court,* to imprisonment in the reformatory of the state.  That statute expressly refers to and covers a crime punishable by imprisonment in the state penitentiary, and merely authorizes a sentence to imprisonment in the reformatory in the court's discretion. It does not require such a sentence or preclude a sentence to imprisonment in the penitentiary.  As the section aforesaid of the Act of 1913 provides for a sentence to imprisonment in the Industrial Institute, "under the provisions" of the said statute referred to, the necessary result is to leave the court with authority to exercise its discretion to provide for imprisonment in the penitentiary or reformatory, as provided in that statute.  And that seems to be the clear intention of the Act of 1913, as indicated by the language employed. The crime of robbery, of which the plaintiff was convicted and sentenced, is made punishable under the general crimes

act by imprisonment in the penitentiary for not more than 14 years. (Comp. Stat. 1910, Sec. 5800.) . It is, therefore, a felony, for all offenses which may be punished by death, or by imprisonment in the penitentiary, are declared by statute to be felonies. (Id., Sec. 6029.)

That it was intended by the Act of 1913 only to substitute the Wyoming Industrial Institute· as the reformatory to which the offenders referred to should be sentenced instead of a reformatory mentioned in Section 540, Chapter 44, of the Compiled Statutes, whenever the court, in its discretion, should impose a sentence to imprisonment in the reformatory instead of the penitentiary, is further made clear by the first section of Chapter 107 of the Laws of 1911, the first act providing for the establishment of the said Industrial Institute. It was provided by that section as follows:

"There shall be established within the state a reform institution which shall be known as 'The Wyoming Industrial Institute' for the custody and discipline of that class of offenders described in Chapter 44, Wyoming Compiled Statutes, 1910, and which may be sentenced to terms of imprisonment therein by trial courts, in accordance with the provisions of said chapter."

The effect of that provision is to declare only that the Institute mentioned shall be established for the custody and discipline of the class of offenders described in the chapter of the statutes referred to who may be sentenced to imprisonment therein, in accordance with the provisions of said chapter, and discloses no intention to prescribe a rule as to the sentence taking away the discretion conferred upon the court by the other existing statute. The words "under the provisions of said chapter" found in Section 8 of the Act of 1913 were used and intended, we think, in the same sense as the words "according to the provisions of said chapter" in Section 1 of the Act of 1911; allowing the court the discretion aforesaid.

That Act of 1911 provided further for the location of the Institute through a vote of the people of the state at the general election in 1912. And the Institute having been so

located, the Act of 1913 was passed, entitled: "An Act authorizing the purchase of land for site, construction of buildings, establishing, maintaining and administration of the Wyoming Industrial Institute; providing for officers and employees of same, and for the education and employment of the inmates thereof, and making an appropriation therefor." By Section 1 of that Act it is declared that the Institute shall be under the management of the State Board of Charities and Reform. Section 2 authorizes said Board to purchase or acquire land at or near Worland to be used by the Institute, and to erect suitable buildings thereon. Sections 3, 4 and 5 provide for the government of the Institute. Sections 6 and 7 contain provisions for a record of the trial of persons sentenced to the Institute and for the transfer and delivery of such persons to the Institute. Then follows Section 8 containing the provisions upon which plaintiff in this case relies; and Section 9 declaring that the discipline of the Institute shall be reformatory, that criminals therein may be employed in agriculture, horticulture or mechanical labor, as a means of support and reformation, and that the Board may use such means of reformation consistent with the improvement of the inmates as they may deem expedient, and provide such machinery and mechanical appliances as may be required for such purposes. There are succeeding provisions in the Act authorizing the Board to transfer from the Institute to the penitentiary persons who may become incorrigible, or may be shown to have been, at the time of conviction, more than twenty-five years of age, or to have been previously convicted of crime, or whose presence in the Institute appears to be seriously detrimental to its well-being, and to order their return to the Institute, and also to transfer to the Institute from the penitentiary youthful, well-behaved and promising convicts therein. And an appropriation is made for carrying out the provisions of the Act. The provision for transferring certain inmates to the penitentiary seems to recognize that their crime was punishable by imprisonment in the penitentiary.

The purpose of the Act, as expressed in its title and all its provisions, other than those found in Section 8, is to provide for the establishment, maintenance and government of the Institute and the care and discipline of the persons confined therein. The provisions relating to the sentence of persons to imprisonment in the Institute are incidental to the purpose thus stated, and must be construed in that light. Section 8 does not indicate a different purpose. Following the provision as to sentencing offenders described in the statute referred to, it is provided by the section that such other juvenile delinquents as in the discretion of the State Board of Charities and Reform should not be confined elsewhere shall be confined in said Wyoming Industrial Institute; disclosing the sole object and intent of the section, in line with the general purpose of the Act, to declare the Institute the reformatory of the state for the confinement of persons theretofore authorized by law to be kept and maintained in reformatory institutions located in other states, except, it would seem, such juvenile delinquents as the Board of Charities and Reform may, in its discretion, cause to be elsewhere confined. We see nothing in this of an intent to interfere with the discretion as to the sentence granted by the provision of the Compiled Statutes referred to. It may be at least doubtful whether under the title of the Act of 1913 a provision could constitutionally be embraced therein amending the previous statute referred to, and the statute defining the crime and prescribing its punishment, so as to take away the authority to sentence to imprisonment in the penitentiary, or to suffer death where that punishment is prescribed.

We conclude, therefore, that the plaintiff is not illegally restrained of his liberty and he will be remanded to the custody of the defendant, the Warden of the state penitentiary.

BEARD, J., concurs.