## URAM v. ROACH, WARDEN
(No. 1898; November 23, 1934; 37 Pac. (2d) 793)

336

For the plaintiff there was a brief by *W. B. Cobb*, of Casper, and oral argument by *Mr. Cobb*.

For the defendant there was a brief by *Ray E. Lee*, Attorney General; *Oscar O. Natwick,* Deputy Attorney General, and *Wm. C. Snow,* Assistant Attorney General, and an oral argument by *Ray E. Lee.*

KIMBALL, Chief Justice.

The plaintiff, Mike Uram, alleges that he is unlawfully confined in the state penitentiary and applies for a writ of *habeas corpus*. A similar previous application to the judge of the second district court has been denied.

The warden as defendant has filed his answer to which plaintiff demurs, but the parties evidently desire a decision on the facts that are shown by a written stipulation.

In November, 1928, the plaintiff, then about 20 years of age, was arrested for burglary in Lincoln County. He gave the name of John Spaulding and on November 13, on an information charging him by that name, pleaded guilty to the crime for which he was arrested. In answer to questions by the judge, he stated, among other things, that he was 18 years of age, had been in Wyoming two or three months, and had never before been convicted of a felony. Thereupon he was sentenced to the Wyoming Industrial Institute at Worland, therein to be "confined under the provisions of law, and the rules and regulations governing the same, to be treated, cared for, kept and confined in such manner and for such length of time as may be best to the officers or board having by law control of such matters

but not in any event to exceed the maximum term of fourteen years."

On November 15, 1928, the plaintiff in custody of the officers on the way to Worland was lodged for safekeeping over night in the penitentiary at Rawlins, and was there recognized as Mike Uram a previous inmate. The warden then took charge of plaintiff and has since held him in confinement in the penitentiary. It is admitted that plaintiff's true name is Mike Uram, who twice before had been convicted of burglary and had served sentences therefor—the first in the industrial institute, and the second, which expired in January, 1927, in the penitentiary. The facts concerning the previous convictions of plaintiff were ascertained by the board of charities and reform and by reason thereof the board ordered plaintiff to be confined in the penitentiary. The written evidence of the board's actions consists of the following:

First: Letter of November 23, 1928, from the secretary of the board of charities and reform to the warden stating that, considering Uram's past record, the board had decided to exercise the authority given them by section 628, Wyo. C. S. 1920, to transfer him to the penitentiary, and that the warden is authorized to register the prisoner as an inmate of that prison. The "official record and minute book" of the board does not show that the question of confinement of plaintiff was presented to or acted upon by the board before the above letter was written.

Second: The minutes of a meeting July 3, 1929, of the state board of pardons showing that attention was called to the fact that plaintiff "was sentenced on November 13, 1928, for burglary to serve an indefinite term at the Wyoming Industrial Institute. He was brought to the penitentiary to be held until Mr. Moncur could send for him. When it was learned that he had

already served a sentence at the industrial institute and one in the Wyoming penitentiary beside a more recent one in Montana, the board ordered his detention at the penitentiary instead of sending him on to the industrial institute." The record then recites: "It is now desirable that he be given a penitentiary sentence carrying a minimum and maximum. Motion made and carried fixing sentence at 7 to 14 years."

Third: The minutes of a meeting may 7, 1934, of the board of charities and reform showing that:

"The case of Mike Uram, No. 4071, had the attention of the Board. This man was sentenced to the Wyoming Industrial Institute on November 13, 1928, from Lincoln County to a term of not over 14 years, but was recognized as a former convict while held at the Penitentiary pending removal to Worland. For the purpose of completing the record it was moved and unanimously carried that the transfer of Mike Uram to the State Penitentiary for confinement under the Board authority as provided by Section 912, Chapter 108, Revised Statutes 1931, be and it is hereby approved, and further that the action taken by the board of July 3rd, 1929, imposing a minimum sentence of 7 years be set aside."

The plaintiff was not present at any meeting of the board of charities and reform or the board of pardons when any of the actions were taken with reference to his confinement.

The state constitution provides that state charitable, reformatory and penal institutions shall be under the general supervision of a board of charities and reform, whose duties and powers shall be prescribed by law. Art. 7, § 18. The members of the board are the governor and the four other elective executive officers of the state. R. S. 1931, § 103-101. The same officers constitute a statutory board of pardons authorized to investigate applications for executive clemency. R. S. §§ 80-101, 80-102.

The Wyoming Industrial Institute is a reformatory for the custody and discipline of those persons under the age of 25 years, convicted of felony, who have not theretofore been convicted of a crime punishable by imprisonment in the state penitentiary. R. S. § 80-301, 108-901. Such persons may, in the discretion of the court, be sentenced either to the industrial institute or to the penitentiary. Hukoveh v. Alston, 25 Wyo. 122, 165 Pac. 988. If the sentence be to the penitentiary for less than life the court fixes a maximum and minimum term (§ 33-1301) ; if to the industrial institute the court does not fix or limit the duration of the period of confinement, except that it shall not exceed the maximum term provided by law (§ 80-301).

Section 108-912, R. S. 1931, referred to in the minutes of meeting of May 7, 1934, of the board of charities and reform (formerly section 628, C. S. 1920, referred to in the secretary's letter of November 23, 1928) provides that:

"The state board of charities and reform shall have the power to transfer to the state penitentiary, or in case any inmate shall become insane, to the Wyoming state hospital for the insane, any inmate, who subsequent to his committal, shall be shown to have been, at the time of his conviction, more than twenty-five years of age, or to have been previously convicted of crime, and may also so transfer any apparently incorrigible prisoner, whose presence in the institute appears to be seriously detrimental to the well-being of the institute; and said state board of charities and reform, by written requisition, may require the return to the institute of any person who may have been so transferred."

The plaintiff contends that his transfer to the penitentiary under the above statute is a change of his sentence, and the imposition of greater punishment, by an administrative board that cannot exercise judicial power. The statute is challenged as contrary to constitutional guarantees of due process, equality of

rights, and trial by jury with opportunity to defend (Art. 1, §§ 3, 6, 9, 10) ; as permitting the exercise of arbitrary power (Art. 1, § 7) and as a delegation of judicial functions to an executive board (Art. 5, § 1).

In many of the states are found similar statutes under which an inmate of one reformatory or penal institution may be transferred to another on the order of administrative officers or boards authorized to determine the facts that justify the transfer. In several jurisdictions the constitutionality of such statutes seems never to have been questioned. When questioned, they have been upheld in all the cases that have come to our attention, except two, Re Dumford, 7 Kan. App. 89, 53 Pac. 92, and People ex rel. Martin v. Mallary, 195 Ill. 582, 63 N. E. 308, 88 Am. St. Rep. 213. The Kansas case has been overruled (Re Murphy, 62 Kan. 422, 63 Pac. 428), and the Illinois case may, perhaps, be distinguished from the case at bar on grounds suggested by the court at p. 595 of 195 Ill., 63 N. E. 508.

In an early case (State ex rel. McDonald v. Vermilye, 39 N. J. L. 282) the relator who had been committed to the common jail of the county was transferred to the county penitentiary pursuant to a statute which authorized the board of freeholders to make transfers from one institution to the other "whenever the said board shall deem it expedient." It was held that the board, in their discretion, had power to make transfers to relieve the crowded condition of either institution, and to make changes for the purpose of security and discipline. Constitutional questions were not discussed, but as to that see Stagway v. Riker, 84 N. J. Law 201, 86 A. 440, a later case in the same state.

In another early case, Cassidy's Petition, 13 R. I. 143, the petitioner had been sentenced to a reform school during his minority, or in the alternative to the county jail for 30 days. He was afterwards removed

to the state workhouse as incorrigible by order of the state board of charities and corrections. He asked release on *habeas corpus* contending that the statute authorizing his removal to the state workhouse was unconstitutional because it conferred judicial power on the state board and enabled them to alter the sentence of the court. In disposing of this contention the court said: "The statute was enacted before the sentence was pronounced, and the sentence must therefore be held to have been pronounced subject to its provisions. And the power given to the board is in our opinion simply disciplinary, and not in the constitutional sense of the word judicial." This is a brief statement of the reasons which with elaboration have been given in later cases wherein similar statutes have been held valid. Miller v. State, 149 Ind. 607, 621, 623, 49 N. E. 894, 40 L. R. A. 109; Rich v. Chamberlain, 104 Mich. 436, 62 N. W. 584, 27 L. R. A. 573; Re Murphy, supra; In re Linden, 112 Wis. 523, 88 N. W. 645; In the Matter of Clayton, 13 Oh. Dec. 546; State ex rel. Kelly v. Wolfer, 119 Minn. 368, 138 N. W. 315, 42 L. R. A. (N. S.) 978; Stagway v. Riker, 84 N. J. L. 201, 86 Atl. 440; Pellissier v. Reed, 75 Wash. 201, 134 Pac. 813; Sheehan, Petitioner, 254 Mass. 342, 150 N. E. 231; Glazier v. Reed, 116 Conn. 136, 163 Atl. 766; People ex rel. Cunningham v. Warden, 183 N. Y. Supp. 882.

There can be no doubt that the legislature has the right to provide that first offenders only shall be confined in the industrial institute. The sentence of plaintiff to that institution was a judicial act, but existing pertinent statutes became a part of the sentence as if extended at length in the record of the court. Sheehan, Petitioner, supra. The sentence, therefore, was to the industrial institute on condition that the prisoner might be transferred to the penitentiary by the board of charities and reform if it should thereafter appear that he had previously been convicted of a felony. It

is true that the judge who imposed the sentence found that, "according to the best information the court was able to obtain," plaintiff had not theretofore been convicted. Such a finding must often be made, as in this case, on information obtained from the prisoner himself who, of course, knows the facts. There would be no justice in permitting him to gain an advantage by deceiving the judge. In view of the statute authorizing transfers, the finding of the judge that plaintiff was eligible to confinement in the industrial institute was merely advisory. In the matter of Clayton, supra; Colip v. State, 153 Ind. 584, 589, 55 N. E. 739, 74 Am. St. Rep. 322. As liability to transfer upon specified conditions was a part of the original sentence, such transfer was not a changed or substituted sentence, but a carrying out of the original sentence. Sheehan, Petitioner, supra; Rich v. Chamberlain, supra.

We do not think the constitution contains any provision that prohibits the legislature from authorizing an administrative board to make such a transfer without a hearing. The transfer of prisoners from one prison to another has long been considered an executive act. See, Kingen v. Kelley, 3 Wyo. 566, 586, 28 Pac. 36, 15 L. R. A. 177. Confinement in either the penitentiary or the industrial institute was affixed by statute as a penalty for the crime to which plaintiff pleaded guilty. The power exercised in making a transfer is in its essence administrative, though the board may be required incidentally to consider and determine questions of fact. See, State ex rel. Wyckoff v. Ross, 31 Wyo. 500, 519, 228 Pac. 636. These views are supported by the cases in all jurisdictions where the question has been raised, except in Illinois.

We realize that notice and hearing may often be necessary to comply with the constitutional requirement of due process even in administrative proceedings. See

note, 80 U. of Penn. L. Rev. 96. The necessity must depend somewhat on the nature of the right affected by the administrative action. See, State ex rel. Hamilton v. Grant, 14 Wyo. 41, 81 Pac. 795, 82 Pac. 2, 1 L. R. A. (N. S.) 588, 116 Am. St. Rep. 982. Notice and hearing involve time and expense and may often impair executive efficiency. In the case at bar the plaintiff admits facts showing that he was ineligible to sentence to the industrial institute. Even if he had been a first offender, as he claimed at the time of sentence, he would have had no right to demand that he be sentenced to that institution, and his transfer to the penitentiary would have deprived him of a privilege that might have been denied altogether. That privilege is granted by the legislature to a class to which plaintiff does not belong. His presence at the industrial institute even for a short time might seriously interfere with discipline adapted to the care and reformation of less hardened criminals. We think it not unreasonable that the board have authority to avoid that condition by making a transfer at once on discovery of the facts which warrant it. Precedents to which we must look indicate that in the transfer of convicts from one penal or reformatory institution to another notice and hearing before the transfer are not a necessary part of due process. None of the similar statutes of other states considered in the above cited cases provided for notice and hearing. Under the New York statute, sustained in People ex rel. Cunningham v. Warden, supra, the order for transfer is made by the justice of a court, but without an opportunity for the prisoner to be heard. See, also, Ughbanks v. Armstrong, 208 U. S. 481, 488, 285 S. Ct. 372, 52 L. Ed. 582; People v. Dudley, 173 Mich. 389, 138 N. W. 1044.

We grant that the prisoner ought to be treated fairly and protected from arbitrary action or abuse of discretion. See Burns v. United States, 287 U. S. 216,

222, 53 S. Ct. 154, 77 L. Ed. 266. If the plaintiff were claiming that in fact he is not Mike Uram who had previously been convicted of felonies, we concede that he would be entitled to a hearing on that question either on habeas corpus or other proceeding in which the action of the board might be reviewed. See, Ex Parta, (D. C.) 257 Fed. 110, 112; Kennedy's Case, 135 Mass. 48, 54; Chin Yow v. United States, 208 U. S. 8, 28 S. Ct. 201, 52 L. Ed. 369; In re Canfield, 98 Mich. 644, 648, 57 N. W. 807.

Our views expressed above are not contrary to anything decided in Bandy v. Hehn, 10 Wyo. 167, 67 Pac. 979, cited by plaintiff. We there held that under a statute providing that on a second conviction of petit larceny the offender shall suffer the penalty of grand larceny, the former conviction enters into the offense to the extent of aggravating it and increasing the punishment, and must be alleged in the information and proved in order to authorize the imposition of the greater penalty. In the proceedings in the district court under statutes applicable to the case at bar the fact that plaintiff had or had not previously been convicted was important only as an aid to the judge in exercising discretion in deciding whether or not the sentence should grant to plaintiff the statutory conditional privilege of confinement in the industrial institute. See In re Canfield, supra; Commonwealth v. Markarian, 250 Mass. 211, 145 N. E. 305.

The plaintiff contends also that the power to transfer has not been legally exercised. We think it is not material that plaintiff was not bodily taken from the industrial institute to the penitentiary, but was kept at the latter institution where he happened to be when his identify became known. See Cassidy's Petition, supra; Glazier v. Reed, supra. The statute does not prescribe the formalities of a transfer. We think the

letter of November 23, 1928, from the secretary of the board to the warden was sufficient authority for the confinement of plaintiff in the penitentiary, if the letter was authorized by the board. It was not authorized by any previous recorded action. It is agreed that the board ascertained the facts that justified the transfer. They probably thought that, as the plaintiff was already at the penitentiary, where he should be, a recorded order of transfer was not necessary. On July 3, 1929, the officers comprising the board, while sitting as a board of pardons, assumed that a transfer had been made, and on May 7, 1934, a record was made showing the board's approval of the transfer. These facts are sufficient, we think, to show that the letter of November 23, 1928, was authorized.

We may add that the action of July 3, 1929 of the board of pardons purporting to fix a minimum sentence, and thereby change the sentence of the court, was apparently ill-advised and without authority; but there is nothing to show that plaintiff was injured by it, and apparently it now is disregarded by the board of charities and reform.

We conclude that plaintiff is not illegally confined in the penitentiary, and he will be remanded to the custody of the warden.

BLUME and RINER, JJ., concur.