IN RE RAYMOND SOBORSKY.

May Term, 1938.

Present: MOULTON, SHERBURNE, BUTTLES and STURTEVANT, JJ., and JEFFORDS, Supr. J.

Opinion filed June 9, 1938.

*John Molla* for the petitioner.

*Lawrence, C. Jones,* Attorney General, for the petitionee.

STURTEVANT, J. This is an original petition for a writ of *habeas corpus.* The petition is brought by John Molla, Esq., a practicing attorney of this Court, in behalf of one Raymond Soborsky. Hereinafter the term "petitioner" refers to Soborsky. The petitioner alleges that he is without law or right confined at the Vermont state hospital for the insane at Waterbury, Vermont, by Dr. J. C. O'Neil, superintendent of said state hospital. The following undisputed facts appear from petitionee's return.

At the June term of Windsor county court, in 1926, said Soborsky was convicted of two crimes, viz., burglary and assault with intent to kill. On the 14th of July, 1926, said court imposed sentence upon Soborsky in each of these cases. In the burglary case he was sentenced to be confined at the state prison at Windsor for the term of not less than six years nor more than eight years, and in the assault case he was sentenced to be confined in said prison for a term of not less than eight years nor more than ten years. These sentences were not to run concurrently. He was committed to said prison and began serving these sentences on July 14, 1926. Soborsky remained at said prison serving said sentences until June 19, 1937, when by authority of an order of the governor, issued in accordance with the provisions of P. L. sec. 8794, and not otherwise, he was transferred from said prison and committed to said Vermont state hospital for the insane at Waterbury, into the custody of Dr. J. C. O'Neil, superintendent of said hospital. He has been confined in the so-called criminal ward at said hospital. The term for which he is committed to said hospital as shown by said order is "* * * during the remainder of his said terms of imprisonment, to wit; such time as added to the time already served by the said Raymond Soborsky will equal the terms of his original sentences."

The petitioner contends that he is unlawfully confined at said hospital for the following reasons, viz.:

1. That his confinement at said hospital is not temporary, but permanent.

2. Because the law, by authority of which said order of transfer issued, attempts to give to the governor judicial powers and that he, as governor, cannot lawfully exercise such powers.

3. Because his transfer to said hospital was without due process of law, since he was not given notice of hearing or opportunity to be heard upon the issue of his insanity.

■ As to petitioner's first objection, it is sufficient to note that from that provision of the governor's order above quoted, the term of Soborsky's commitment to said hospital is for "* * * such time as added to the time already served by the said Raymond Soborsky will equal the terms of his original sentences." Hence it appears that the term of petitioner's commitment to said hospital is not permanent as contended, so we give no further consideration to this objection. P. L. sec. 8795 provides for the return of the petitioner to the Vermont state prison, should he become sane before the time covered by the two sentences has expired.

Consideration of petitioner's second objection, as above stated, requires an examination of the provisions of the statute in question. P. L. sec. 8794 reads as follows:

"Sec. 8794. *Removal to State Hospital for Insane.* When a person confined in the state prison, house of correction, Vermont industrial school or a county jail for a specified time or for life, becomes insane, he may be removed to the Vermont state hospital for the insane only upon the order of the governor, based upon such expert examination as to insanity as the governor directs, there to remain until the expiration of the term for which he was committed."

■■ The above quoted statute was amended into its present form by the Legislature in 1912. Hence this statute was in full force and effect when the petitioner was sentenced by the Windsor county court in 1926. Therefore the provisions of same entered

into and became a part of each of said sentences as though its provisions were spread upon the record with the sentences. The petitioner has been subject to the provisions of this statute at all times since said sentences were passed. The fact that this law provides that the governor shall, upon such expert examination as to petitioner's insanity as he directs, determine whether the provisions of this statute require that petitioner be removed to said state hospital, does not grant the exercise of a judicial function. His act here is administrative rather than judicial. The courts of other states have taken this view in many cases, where a similar question has arisen. *Glaizer* v. *Reed*, 116 Conn. 136, 163 Atl. 766; *In re Murphy*, 62 Kan. 422, 63 Pac. 428; *In re Sheehan*, 254 Mass. 342, 150 N. E. 231; *State ex rel. Kelly* v. *Wolfer*, 119 Minn. 368, 138 N. W. 315, 42 L. R. A. (N. S.) 978, Ann. Cas. 1914A, 1248; *People ex rel. Cunningham* v. *Warden*, 183 N. Y. S. 882; *People ex rel. Stephani* v. *North*, 155 N. Y. S. 595, 596, 91 Misc. 616; *Cassidy's Petition*, 13 R. I. 143; *Whittaker* v. *Brannan* (4th Cir.), 252 Fed. 556. In *Rich* v. *Chamberlain*, 104 Mich. 436, 62 N. W. 584, 27 L. R. A. 573, considering the transfer of a prisoner from one state institution to another, the court said: "The sentence impliedly subjects him to this when, in the discretion of the proper executive officer or board, crowded prisons or any other reasons require or make it advisable."

As to petitioner's third objection, it clearly appears that the object and purpose of the statute is to provide a proper and efficient method of transferring a prisoner from the state prison to the Vermont state hospital for the insane, when it shall appear to the proper officer that the welfare of such prisoner and the best interests of other prison inmates may require. Such transfer does not deprive him of his liberty; that is done by the original sentence and the provisions of the statute in question form a part of such sentence. Under the circumstances here involved, the determination of the question as to the petitioner's sanity was an administrative function and under the statute above quoted could be lawfully exercised by the governor without notice to the petitioner or giving him opportunity to be heard or to present evidence as to his insanity. *People ex rel. Gorofsky* v. *Warden*, 183 N. Y. S. 885; *Stagway* v. *Riker*, 84 N. J. Law, 201, 86 Atl. 440; *Pellisier* v. *Reed*, 75 Wash. 201,

134 Pac. 813; *Uram* v. *Roach*, 47 Wyo. 335, 37 Pac. (2d) 793, 95 A. L. R. 1448; *People ex rel. Stephani* v. *North, supra.*

 The case *In re Allen*, 82 Vt. 365, 73 Atl. 1078, 26 L. R. A. (N. S.) 232, and other cases cited by petitioner in support of his contention deal with the situation presented where a person in full enjoyment of his liberty is committed to the Vermont state hospital for the insane without notice or hearing, an entirely different situation than that with which we are dealing here, hence those cases are not in point. It follows from the foregoing that the transfer of the petitioner from the state prison to the said hospital was legal and therefore:

*It is adjudged that the petitioner is not illegally deprived of his liberty and he is remanded to his former custody, viz., into the custody of the superintendent of the Vermont state hospital for the insane at Waterbury in the County of Washington and State of Vermont; and his petition is dismissed.*