### WHITTAKER v. BRANNAN et al. *

(Circuit Court of Appeals, Fourth Circuit. April 30, 1918.)

No. 1607.

1. CONSTITUTIONAL LAW ☞80(2)—PRISONS ☞13—JUDICIAL OR MINISTERIAL FUNCTION—TRANSFER OF PRISONERS.

The provision of Act March 2, 1911, c. 192, authorizing transfer, by direction of the commissioners of the District of Columbia, from jail to workhouse of prisoners sentenced to jail, enters into the sentence, and so is not a grant to administrative officers of judicial power, extending to changing sentence.

2. CONSTITUTIONAL LAW ☞42—PERSONS ENTITLED TO RAISE QUESTION.

Validity of statute, as requiring prisoners awaiting trial to work, cannot be questioned by persons not so situated.

3. HABEAS CORPUS ☞113(12)—APPEAL—FACTS NOT PROVED.

A fact on which petitioners in habeas corpus had the burden of proof, not having been proved, cannot avail them on appeal from an order in their favor, based on another ground.

4. PRISONS ☞13—TRANSFER OF PRISONERS—WRITTEN ORDER.

No statute requiring it, order of proper officials for transfer of prisoners from one penal institution to another need not be in writing.

Appeal from the District Court of the United States for the Eastern District of Virginia, at Alexandria; Edmund Waddill, Jr., Judge.

Habeas corpus by Eunice D. Brannan and others against W. H. Whittaker. From an order in favor of petitioners, respondent appeals. Reversed.

Conrad H. Syme, Corp. Counsel, and F. H. Stephens, Asst. Corp. Counsel, both of Washington, D. C., for appellant.

Matthew E. O'Brien, of Washington, D. C., for appellees.

Before KNAPP and WOODS, Circuit Judges, and SMITH, District Judge.

WOODS, Circuit Judge. The appellees, Mrs. Eunice D. Brannan and others, were convicted on November 15, 1917, in the police court of the District of Columbia, of unlawful assembly, and sentenced to pay a fine of $25 each, and in default of payment, to be committed to the Washington asylum and jail, to serve a term of imprisonment. The duration of imprisonment of nearly all the appellees was limited to 15 days. On default of payment of fine, by an oral direction of the commissioners of the District of Columbia, the appellees were delivered to the custody of the superintendent of the workhouse at Occoquan, Va., to be there imprisoned for the term of their respective sentences.

---

While imprisoned in the workhouse, they applied to the District Judge for the Eastern District of Virginia, under habeas corpus proceedings, to be released from confinement in that institution, on the grounds: First, that the transfer to the workhouse was unlawful, because the act of Congress under which it was made was unconstitutional; second, that some of the defendants were carried to the workhouse for confinement before their confinement to the asylum and jail had commenced; third, that the transfer was made on the mere oral direction of the commissioners of the District; fourth, that the treatment of the appellees in the workhouse was cruel and illegal. No question was made as to the jurisdiction of the police court or the legality of the sentences.

Upon the petition, return, and evidence taken, the District Judge held that the transfer to the workhouse and confinement therein were illegal, because made on the mere oral order of the commissioners, and on this ground ordered the petitioners to be returned to the Asylum and jail. Whittaker, the superintendent of the workhouse, appeals.

At the argument, it was conceded that the terms for which the majority were sentenced had expired, but three of them, Mrs. Brannan, Mrs. Butterworth, and Miss Weeks were released by the District Court on recognizance conditioned to abide the judgment of this court. It follows that a reversal of the judgment would be effectual only as to these appellees, and those appellees, if there be any, whose terms of imprisonment have not expired.

In the appropriation bill for the District of Columbia of the 2d of March, 1911, under the head of "Workhouse," an appropriation is made, "in connection with removal of jail and workhouse prisoners from the District of Columbia to a site acquired for a workhouse in the state of Virginia." The enactment here involved is as follows:

"Provided, that the Supreme Court of the District of Columbia, the Attorney General, and the warden of the District of Columbia jail, when so requested by the commissioners of the District of Columbia, shall deliver into the custody of the superintendent or the authorized deputy or deputies of said superintendent of said workhouse, male and female prisoners sentenced to confinement in said jail, for offenses against the common law or against statutes or ordinances relating to the District of Columbia, and, in the discretion of the Supreme Court of the District of Columbia and the Attorney General, male and female prisoners serving sentence in said jail for offenses against the United States, for the purposes named in the law authorizing the acquisition of the site for said workhouse and such other work or services as may be necessary, in the discretion of the commissioners of said District, in connection with the construction, maintenance, and operation of said workhouse, or the prosecution of any other public work at said institution or in the District of Columbia: Provided further, that, on the direction of said Commissioners, male and female prisoners confined in any existing workhouse or in the Washington asylum and jail of the District of Columbia, shall be delivered into the custody of said superintendent or the authorized deputy or deputies of said superintendent aforesaid, to perform similar work or services to those hereinbefore required of male and female prisoners serving sentences in the District of Columbia jail." Act March 2, 1911, c. 192, 36 Stat. 1002.

[1] The constitutionality of the statute is attacked on the ground that it vests in the commissioners of the District of Columbia judicial

power extending to the point of changing a sentence to confinement in the asylum and jail to confinement in the workhouse. This position is based on a misapprehension. The two institutions are parts of the statutory penal system of the District of Columbia, provided for the confinement and care of its criminals. A sentence after conviction of crime has impressed on it, as a part of it, every existing statutory enactment relating to its execution. The provision of the statute authorizing transfer to the workhouse by direction of the commissioners was attached by law to the sentence, and had the same effect as if the court, under statutory authority, had expressed in the sentence that the convict might be transferred to the workhouse under order of the commissioners. The transfer of prisoners under sentence from one penal institution to another, when authorized by statute law in force at the date of the sentence, and when the transfer imposes no hardship beyond that contemplated by the sentence, is the exercise of a ministerial function. Denial by the courts of the power of the Legislature to confer this discretion to transfer from one prison to another on ministerial officers charged with the management of prisons would be judicial usurpation, resulting in great injustice, not only to the public, but to the convicts themselves. This case is illustrative, for it affirmatively appears that the asylum and jail would have been so crowded that the appellees could not have been properly taken care of in that institution. The statute does not impose greater hardship of imprisonment in the workhouse than in the asylum and jail. Indeed it negatives such an intention by providing that prisoners transferred to the workhouse may be required "to perform similar work or services to those hereinbefore required of male and female prisoners serving sentence in the District of Columbia jail."

[2] The appellees, not being persons imprisoned and awaiting trial, are not in a position to assail the statute on the ground that it requires such prisoners to work before conviction, even if that construction could be placed on the statute.

[3] Nor is the technical point that they were taken direct to the workhouse after sentence, before they had been confined in the asylum and jail, even if meritorious, available to the appellees before us. The burden of proving that they were of the number who were not actually transferred from the asylum and jail was on the appellees. Holden v. Minnesota, 137 U. S. 483–492, 11 Sup. Ct. 143, 34 L. Ed. 734; 21 Cyc. 322. It was affirmatively proved that Mrs. Brannan was transferred from the asylum and jail, and no proof was offered that Mrs. Butterworth and Miss Weeks, or any of the appellees whose sentences have not expired, were taken to the workhouse without being first confined in the asylum and jail.

[4] The proposition that the direction of the commissioners to transfer the prisoners to the workhouse was invalid, because not made in writing, is without support in principle or authority. No doubt it is desirable to keep a record of all such orders, but lack of a record does not impair the validity of the action. No statute requires the direction of the commissioners for the transfer to be in writing. Writing adds nothing to the force and effect of individual or official action,

unless writing is expressly or by necessary implication required by law. United States v. Dandridge, 12 Wheat. 64, 6 L. Ed. 552; United States v. Fillebrown, 7 Pet. 41, 8 L. Ed. 596; Handley v. Stutz, 139 U. S. 417, 11 Sup. Ct. 530, 35 L. Ed. 227; Denver v. Arizona R. Co., 233 U. S. 601, 34 Sup. Ct. 691, 58 L. Ed. 1111. It was proved beyond doubt that the commissioners were acting together in their official capacity when they directed that the appellees should be transferred to the workhouse.

The District Judge did not pass upon the effect of the allegation of the petition that the appellees were improperly treated in the workhouse, and counsel for appellees did not maintain at the argument that the appellees were entitled to release on that ground.

Reversed.