

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

March 18, 1939

Honorable W. W. Waid
Warden Texas Prison System
Huntsville, Texas

Dear Sir:

Opinion No. O-524
Re: Returning the body of a
deceased convict who died
while on a reprieve

This is in answer to your letter of March 17, 1939, pursuant to your telephone conversation with us yesterday evening.

You say that A. L. Reed, who was serving a term on a felony conviction in the Texas penitentiary, was granted a ninety day reprieve by the Governor on March 16, 1939, and by virtue of that reprieve you released him yesterday morning to his son, and A. L. Reed and his soon left the prison at Huntsville to go to their home at Paducah, Texas. You further state that A. L. Reed was ill when he left, and that a few hours later at Corsicana, Texas, he died. His body is at Corsicana now.

You desire to know whether or not you have the authority to return his body to his relatives, at the State's expense, from Corsicana to Paducah, in the same manner you would have been allowed to return his body to Paducah if he had died in the penitentiary before the reprieve was granted.

In the event we answer this question "yes", you also want to know if you should send to Corsicana one of the regular prison made coffins that you ordinarily use for returning bodies, or could you authorize the purchase of a coffin in Corsicana.

Article IV, Section 11, of the Constitution of Texas, provides in part as follows:

"In all criminal cases, except treason and impeachment, the Governor shall have power, after conviction, on the written signed recommendation and advice of the Board of Pardons and Paroles, or a majority thereof, to grant reprieves

and commutations of punishment and pardons;
* * *"

This Article also creates the Board of Pardons and Paroles, and authorizes the Legislature to regulate procedure before the Board.

The Legislature has provided for procedure before the Board in Article 6203 of the Revised Civil Statutes.

It will be noted that it was a "reprieve" that was granted in this case. In the case of Ex parte Black, 123 Tex. Crim. Rep. 472, 59 S.W. (2d) 828, the Court of Criminal Appeals of Texas in dealing with the word "reprieve" said:

"Considered in the light of the terms and disclosed purposes of the proclamation, it has the attributes of a reprieve which is one of the acts of clemency embraced in the Governor's authority.

"The term 'reprieve' has been defined thus:

"A reprieve 'signifies the suspension, for a time, of the execution of a sentence which has been pronounced. * * * A reprieve * * * is the withdrawing of a sentence for an interval of time.' Butler v. State, 97 Ind. 373, 374.

"'The term ''reprieve,'' * * * is merely the postponement of the sentence for a time. It does not and cannot defeat the ultimate execution of the judgment of the court; it merely delays it.' Clifford v. Heller, 63 N.J. Law, 105, 42 A. 155, 159, 57 L.R.A. 312."

In deciding the question we have before us, we are controlled largely by the General Appropriation Bill passed by the Forty-Fifth Legislature at the Regular Session in 1937, known as Senate Bill No. 138, in which the sum of $750.00 was appropriated for the following purpose:

"Returning bodies of deceased convicts to indigent relatives for burial; the fact of indigency shall be made known by affidavit of the person claiming the body."

This appropriation provides for "returning bodies of deceased convicts". When A. L. Reed died he was without question a "convict". Webster's New International Dictionary, Second Edition, defines convict as follows:

"A person proved guilty, by a competent tribunal, of a criminal offense; esp., a person convicted of, and under sentence for, a felony or serious crime. Hence, in popular use, a person serving a prison sentence, usually for a long term."

In the case of Brannan vs. State, 44 Tex. Crim. Rep. 399, 72 S.W. 184, the Court of Criminal Appeals of Texas said:

"After a conviction, or the judgment of guilty, a party is termed a 'convict' when he has accepted the sentence or judgment of conviction as a finality, which has been adjudged against him by the court of last resort which has jurisdiction of his case to which he may have thought proper to appeal."

The appropriation provides for "returning bodies of deceased convicts to * * * relatives * * *". The word returning means sending the bodies back from the prison system to where the relatives are. Therefore, if a convict was out on a reprieve, and while he was out he went somewhere on a mission of his own and died, we do not believe that the cost of transporting his body back to his relatives could be paid out of the appropriation. But, in this case, the convict was on his way to his relatives when he died. He was returning over the same route his body would have been sent had he died before leaving the prison; and, having died on the way, we believe it would be within the meaning of the words of the statute for you to pay out of the appropriation the cost of returning his body the rest of the way, provided the proper affidavit by a relative was made.

We also believe that you have the right to buy a coffin in Corsicana, out of this appropriation, if you believe that that is the most expedient way of returning his body. In the case of Terrell vs. Sparks, 104 Tex. 191, 135 S.W. 519, the Supreme Court of Texas, while discussing an official's authority under an appropriation bill, quoted from Sutherland on Statutory Construction as follows:

"'Whenever a power is given by statute, everything necessary to make it effectual or requisite to attain the end is implied. It is a well-established principle that statutes containing grants of power are to be construed so as to include the authori-

ty to do all things necessary to accomplish
the object of the grant."

Article 6166j provides for the employment of a general manager of the prison system. The management of a prison must be dealt with in a practical manner. Every problem must be handled separately with an application of common sense. The Legislature classifies the things for which the money can be spent, but the details of the spending is left to the management of the prison system. The thought we are trying to convey was expressed in the New Jersey case of Stagway vs. Riker, 84 N.J.L. 201, 86 Atl. 440, as follows:

"We think the words 'management of the New Jersey reformatory' are sufficiently comprehensive to convey to the mind a legislative intent to deal with the general subject of the reformatory in all of its details of management and control, and that any one interested in the subject would by force of this legislative notice have his mind directed to the fact that by this measure the Legislature proposed to deal with any conceivable practical phase of reformatory management and control."

In view of the fact that you had to make your decision today, we made all of the haste possible in arriving at our conclusion; and we departed from our usual custom of giving our answer in writing, and this morning we gave you our conclusion over the telephone. We repeat that conclusion here as follows:

It is our opinion that you have the authority to return the body of A. L. Reed from Corsicana to his relatives at Paducah at the State's expense, provided the proper affidavit that his relatives are indigent is made; and you also have the authority to buy a coffin in Corsicana if you believe that is the most expedient thing to do.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By

Cecil C. Rotsch
Assistant

CCR:FG



APPROVED:

ATTORNEY GENERAL OF TEXAS