UNITED STATES ex rel. Vernon W.
STINNETT

v.

Harold HEGSTROM, Warden, Federal
Correctional Institution, et al.

Civ. No. 7820.

United States District Court
D. Connecticut.

Sept. 18, 1959.

James H. Throwe, Hartford, Conn., for petitioner.

Harry W. Hultgren, Jr., U. S. Atty., Hartford, Conn., for respondents.

J. JOSEPH SMITH, Chief Judge.

### Findings of Fact

1. Petitioner, born on May 17, 1940, was on June 28, 1957 committed by the Juvenile Court for the District of Columbia for the period of his minority, expiring May 17, 1961, as a juvenile delinquent, for unauthorized use of an automobile.

2. He was placed in the National Training School for Boys, pursuant to the commitment, on June 28, 1957.

3. On May 30, 1958 he was transferred to the Federal Correctional Institution at Ashland, Kentucky, for maladjustment.

4. On February 16, 1959 he was transferred to the Federal Correctional Institution at Danbury, Connecticut, where he is presently confined in the custody of respondent.

5. No provision is made at the Federal Correctional Institution at Danbury for segregation of juveniles from the rest of the inmate population consisting of men sentenced for violation of federal criminal law.

### Conclusions of Law

1. The court has jurisdiction of the parties and subject matter of the action.

2. The authority of the Attorney General under 18 U.S.C. § 4082, to transfer any inmate committed to the National Training School for Boys to another institution is limited to transfer to comparable institutions for the care, custody and training of juveniles.

3. Petitioner is entitled to release on writ of habeas corpus unless transferred within a reasonable time to an institution or portion thereof set aside and devoted to the care, custody and training of juveniles.

### Discussion

Petitioners in this and companion cases are juveniles imprisoned in the Federal Correctional Institution at Danbury. All were committed as juveniles either to the custody of the Attorney General under the Federal Juvenile Delinquency Act, 18 U.S.C. § 5031 et seq., or to the National Training School for Boys under the District of Columbia Juvenile Act.

 The disciplinary problems arising when these youths committed as juveniles proved incorrigible have led to their confinement in a penal correctional institution by order of the Attorney General. This abrupt transition from juvenile ward of the United States to a member of the general prisoner population points up a weakness in the present system. There has been no criminal trial in any of these cases. Due process requires that a youthful criminal either be tried and sentenced as such at the outset, a course which is open in the case of those considered hoodlums or hardened criminals, or if an original decision to invoke juvenile rather than criminal proceedings is made, and proves ill-advised by reason of later misconduct, due process requires some right of trial for the later misconduct which necessitates treatment as a criminal. No provision has been made for either such trial in the instant cases.

The Fifth Amendment to the Constitution of the United States provides that no person shall be deprived of liberty without due process of law, the Sixth Amendment, that in all criminal prosecutions the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the assistance of counsel for his defense.

 The contention is made that commitment of a juvenile to a penal institution is violative of constitutional rights in two respects; first, because it is punishment when the power of control of the juvenile by the state under the District of Columbia or federal Juvenile Acts as in place of a parent of the juvenile is intended and upheld only for purposes of care, custody and training, see United States v. Borders, D.C. N.D.Ala., 154 F.Supp. 214, affirmed Borders v. United States, 5 Cir., 1958, 256 F.2d 458; and second, because it is punishment without the constitutionally guaranteed trial for the offense for which incarcerated. The contention is sound in both respects. The statute on which the respondent relies, 18 U.S.C. § 4082, was undoubtedly intended to give to the Attorney General power to transfer unruly subjects from the School to institutions of greater security, whether committed under the federal or District of Columbia act, having been amended to cover the District of Columbia cases after the decision in Huff v. O'Bryant,

1941, 74 App.D.C. 19, 121 F.2d 890. However, there is no provision for any court trial to determine whether any breach of law or discipline justifies the transfer. Under the federal act it has been argued that the requirements of due process are met by the accusation of crime, the waiver of indictment and jury trial, the finding of delinquency, and the general commitment to the custody of the Attorney General, for here the case has its inception as a criminal proceeding, and the usual safeguards of criminal procedure are available to the juvenile and are voluntarily waived with knowledge that the Attorney General may designate the place and type of correctional institution for confinement. The later transfer from one institution to another, it is said, may well be considered treatment or punishment for the first offense. The difficulty with that argument is that the waiver was for the purpose of a juvenile proceeding, not criminal in nature. A later change without opportunity to be heard, reconverting it into a criminal proceeding, is lacking in due process. The legislative history of the Act demonstrates that criminal proceedings and penal confinement were not intended. Senate Report 1989, 75th Congress, 3rd Session, recommending the passage of the bill drafted by the Department of Justice, which became the federal Juvenile Delinquency Act, relied upon a letter of the Attorney General of May 12, 1938.

> "Students of criminology and penology generally agree that it is undesirable, from the standpoint both of the community and of the individual, that all juvenile offenders be treated as criminals. Many of them can be reclaimed and made useful citizens if they are properly treated and cared for, and are not permitted to mingle with mature and perhaps hardened criminals. In order to achieve these purposes it is important that juvenile offenders should not become inmates of penitentiaries or other penal institutions in which adults are incarcerated.

> It is likewise advisable that a juvenile delinquent for whom there is some hope of rehabilitation should not receive the stigma of a criminal record that would attach to him throughout his life."

In the description of the bill the letter includes the following:

> "2. It applies to all Federal offenses committed by juveniles, other than offenses punishable by death or life imprisonment. However, the Attorney General is to be granted the option of prosecuting a juvenile on a charge of juvenile delinquency or for the substantive offense of which he is accused. The purpose of this provision is to make it possible, if it appears desirable, to prosecute the more serious juvenile offenders in the same manner as adults."

It was clearly intended therefore that when the option chosen was for treatment as a juvenile delinquent, no criminal confinement was to be had.

In the District of Columbia cases, moreover, the act is much broader. Commitment may be for delinquency, or may in a proper case be only to provide support and training to avoid future crime or destitution. There may be no accusation of criminal conduct involved and no opportunity for trial of guilt or innocence. In such a case also transfer to a penal institution because of misconduct at the School is punishment for an offense with no opportunity for defense.

House Report 177, 75th Congress, 1st Session, on the bill to amend the Juvenile Court Act of the District of Columbia, indicates that the main objectives were

> "to change the court from a criminal to a chancery court and to give it original and exclusive jurisdiction over children up to 18 years of age who have broken any law, with certain reservations as to older children.

> "It would make a new type of court based on the broad principle that the child who comes before the court is not to be regarded as a

criminal, but as one whose individual welfare coincides with the well-being of the State and who is to be saved to it rather than prosecuted by it. The letter of the proposed bill clearly implies its spirit which is one of protection and welfare rather than punishment and retribution * * *. A safeguard is provided whereby the juvenile court at its discretion may send to the United States District Court of the District of Columbia cases in which children over 16 are involved in serious offenses. But the jurisdiction is in other respects original and exclusive up to 18 years. Information and complaint of criminal procedure give way to a petition setting forth the facts that bring the child within the provisions of the Act."

Judge Julian Mack, testifying on hearings on the bill (D.C.Juv.Ct.Act) indicated that in his opinion a child does not have a constitutional right not to be taken in charge by the State which as the higher parent is aiming for that child's own good. He went on however, "I do not mean to say that the State cannot hold the child responsible as a criminal, because it can if it wants to. And the moment the State holds the child responsible as a criminal, then the child has a constitutional right to those safeguards that are accorded under the Constitution to all criminals, irrespective of age."

The language of the Act of October 21, 1941, added to the Act of May 14, 1930, now codified in 18 U.S.C. § 4082, 62 Stat. 850, gives seemingly unlimited discretion to the Attorney General to transfer from one institution to another, even though the original commitment was to the National Training School, and even though the commitment was by the Juvenile Court of the District of Columbia. Senate Report No. 593, 77th Congress, 1st Session, indicates that the department then (in 1941) construed the statute as permitting transfer of juveniles committed under the federal act to any institution except a penitentiary, and asked and received an amendment extending the power of transfer to those committed under the District of Columbia Act. The letter of the Attorney General quoted in the report points out the difficulty of controlling dangerous and hardened young criminals at the National Training School. The records in the cases of the petitioners now before this court indicate that they are serious disciplinary problems. It is probable that they need stricter custody and supervision than the general population of the Training School. This must be provided, however, outside the general penal population, or the purposes of the juvenile acts will be defeated and the cogent reasons which have led the courts to sanction custody of juveniles without full criminal proceedings will become hollow pretense. White v. Reid, D.C.D.C., 125 F.Supp. 647, same case, D.C., 126 F. Supp. 867. The power of the Attorney General to transfer even to a penitentiary under the Act has been upheld, as in Suarez v. Wilkinson, D.C.M.D.Pa.1955, 133 F.Supp. 38; United States v. McCoy, D.C.M.D.Pa.1957, 150 F.Supp. 237. In the Suarez and McCoy cases, however, the constitutional points appear not to have been raised, as they have been raised in the cases at bar. The constitutional guarantees appear to this court to present an insuperable obstacle to a construction of the statute which would give the Attorney General unlimited discretion over transfer to places of confinement of juveniles which would include mingling them with general prison populations in penal institutions of all types.

The discretion given the Attorney General by Congress to designate the institution and to transfer from the National Training School for Boys when deemed proper, can be only to an institution for the care and custody of juveniles, with facilities in some degree comparable to the National Training School. To hold otherwise would be to permit confinement for crime without a right to trial. This would be violative of the constitutional right to due process under the Fifth

Amendment and to the guaranties of fair trial of the Sixth Amendment. Some or all of petitioners are admittedly disciplinary problems. They are in custody however as juveniles and have not been tried and sentenced for crime committed before they were placed in custody as juveniles, or for any offense since committed while in such custody. They must be confined only with other juveniles until and unless charged with and convicted of crime.

Petitioner is ordered released from custody unless transferred to the National Training School for Boys or an institution with substantially similar facilities, where adult criminals are not confined in contact with juveniles, within a reasonable time of the order herein.