**Michael Edward SHONE, Petitioner,**

v.

**STATE OF MAINE and Merton Johnson, Superintendent, Maine State Correctional Center, Respondents.**

**Civ. No. 10–54.**

United States District Court

D. Maine, S. D.

June 19, 1968.

———◆———

Henry N. Berry, III, Portland, Me., for petitioner.

John W. Benoit, Asst. Atty. Gen., Augusta, Me., for respondents.

## OPINION AND ORDER OF THE COURT

GIGNOUX, District Judge.

This is a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 (1964), et seq. The question presented is the constitutional validity of the Maine statutory procedure under which petitioner, a juvenile offender, was administratively transferred from a state juvenile institution to an adult reformatory. The Court holds that the transfer infringed no constitutional right of petitioner, and therefore denies the writ.

Petitioner, Michael Edward Shone, is presently confined at the Maine State Men's Correctional Center, South Windham, Maine. On May 15, 1967, the Ninth District Court of Maine, Division of Southern Cumberland, found after hearing that petitioner, aged 15, had committed a juvenile offense by reason of his breaking, entering, and committing larceny at the Blue Moon Cafe, Portland. The court ordered pursuant to 15 M.R.S.A. § 2611(4B) (1964) that

petitioner be committed to the Boys Training Center at South Portland for the term of his minority "unless sooner discharged or otherwise disposed of by law." See 15 M.R.S.A. § 2714 (1964). Petitioner did not appeal either the finding that he had committed the offense or the disposition of his case, see 15 M.R.S.A. §§ 2661(2), 2665, nor does he here contend that his constitutional rights were in any way impaired by the procedures employed at his juvenile hearing.

Nine days after being committed to the Boys Training Center, petitioner was deemed to be incorrigible by the administrators of the Training Center and a request was made to transfer petitioner to the Correctional Center[1]. On or about May 28, 1967 after the approval of the Maine Commissioner of Mental Health and Corrections had been obtained, petitioner was administratively transferred to the Correctional Center in accordance with the procedure specified by 15 M.R.S.A. § 2717 (1964).

Petitioner sought post-conviction relief in the courts of the State of Maine under 14 M.R.S.A. § 5501 (1964) et seq., on the same ground as is alleged here, namely that the statute and procedure pursuant to which he was administratively transferred from the Training Center to the Correctional Center are unconstitutional under the Sixth and Fourteenth Amendments to the Federal Constitution. His petition was denied by the single justice and the denial was affirmed by the Supreme Judicial Court of Maine. Shone v. State, 237 A.2d 412 (Me.1968). Petitioner thereupon filed his present petition in this Court. He has been permitted to proceed in forma pauperis and has been represented by counsel of his own choice. It is conceded that petitioner has exhausted his available state remedies as required by 28 U.S.C. § 2254 (1964), and the parties have stipulated that his right to habeas relief be determined, without a further evidentiary hearing, upon the record of his post-conviction proceedings in the state courts.

The sole ground asserted by petitioner in support of his petition is that he was denied due process of law and the equal protection of the laws guaranteed to him by the Constitution of the United States by his administrative transfer from the Boys Training Center, to which he had been committed, to the Men's Correctional Center, in which he is now confined. He contends that 15 M.R.S.A. § 2717, insofar as it permits the transfer of an inmate of the Boys Training Center to the Men's Correctional Center without at least some procedural safeguards such as a judicial hearing, the right to counsel, and the right to confront and cross-examine witnesses is unconstitutional and void.

At the time petitioner's transfer was effected, 15 M.R.S.A. § 2717 (1964) provided [2],

Any child committed to the center whose presence therein may be seriously detrimental to the well-being of the center, or who willfully and persistently refuses to obey the rules and regulations of said center may be deemed incorrigible, and upon recommendation of the superintendent may be transferred to a reformatory with the approval of the Commissioner of Mental Health and Corrections, but no child shall be transferred under the age of 15. To so transfer, the superintendent shall certify that the child is incorrigible upon the mittimus in the case with the recommendation that transfer to the appropriate reformatory be effected. Upon approval by the Commissioner of Mental Health and Corrections, the transfer may be effected any time thereafter. It shall

---

1. At the time the transfer was made the Men's Correctional Center was called the Men's Reformatory. The name was changed shortly thereafter. See 34 M.R.S.A. § 801 (1967 Supp.).

2. 15 M.R.S.A. § 2717 was amended by Laws of Maine, 1967, ch. 391 § 2 effective Oct. 7, 1967 in a manner not pertinent to the present case. See 15 M.R.S.A. § 2717 (1967 Supp.).

be the duty of the officers of the reformatory to receive any person so transferred and the remainder of the original commitment shall be executed at the reformatory, except that in the event a child so transferred has, in the opinion of the superintendent of the reformatory and of the superintendent of the center, benefited from the program at the reformatory, to such an extent that return to the center would be in the best interest of the child and of the community, such child may be returned to the center. The reason for such return shall be certified by the recommending superintendents on the mittimus and certification of the return shall be made by the recommending superintendents to the Commissioner of Mental Health and Corrections, giving their reasons therefor.

Petitioner does not contend that his transfer was not properly accomplished under this section, but confines his attack to the constitutionality of the statute itself.

Although the United States Supreme Court has not yet had occasion to pass upon the precise issue which petitioner here raises, the great weight of state and lower federal authority sustains the constitutionality of administrative inter-institutional transfer statutes similar to the one here involved. See Shone v. State, supra; Wilson v. Coughlin, 147 N.W.2d 175 (Iowa 1966); Long v. Langlois, 93 R.I. 23, 170 A.2d 618 (1961); Sonnenberg v. Markley, 289 F.2d 126 (7th Cir. 1961); Arkadiele v. Markley, 186 F.Supp. 586 (S.D.Ind.1960); Trimble v. Stone, 187 F.Supp. 483, 486 n. 2. (D.D.C.1960) (dictum); Clay v. Reid, 173 F.Supp. 667 (D.D.C.) appeal dismissed 106 U.S.App.D.C. 298, 272 F.2d 527 (1959); Suarez v. Wilkinson, 133 F.Supp. 38 (M.D.Pa.1955); People v. Scherbing, 93 Cal.App.2d 736, 209 P.2d 796 (1949); Moffett v. Hudspeth, 165 Kan. 656, 198 P.2d 153 (1948); In re Robertson, 5 Terry 28, 54 A.2d 848 (Del.Gen.Sess.1947); Uram v. Roach, 47 Wyo. 335, 37 P.2d 792, 95 A.L.R. 1448 (1934); Sheehan, Petitioner, 254 Mass. 342, 150 N.E. 231 (1926); In re Schiavone, 183 N.Y.S. 884 (Sup.Ct.1920); Stagway v. Riker, 84 N.J.Law 201, 86 A. 440 (1913); Cassidy, Petitioner, 13 R.I. 143 (1880). But see United States ex rel. Stinnett v. Hegstrom, 178 F.Supp. 17 (D.Conn.1959); White v. Reid, 125 F. Supp. 647 (D.D.C.1954) and 126 F.Supp. 867 (D.D.C.1954); Mills, "Juvenile Delinquency—Also a Federal Problem," 49 ABA Journal 44, 46–47 (1963); Note, Facts and Law of Inter-Institutional Transfer of Juveniles, 20 Me.L.Rev. 93 (1968)[3].

The question now is whether this authority is still valid in light of four recent Supreme Court decisions on different, but related questions: Mempa v. Rhay, 389 U.S. 128, 88 S.Ct. 254, 19 L. Ed.2d 336 (1967); In re Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967); Specht v. Patterson, 386 U.S. 605, 87 S. Ct. 1209, 18 L.Ed.2d 326 (1967); Baxstrom v. Herold, 383 U.S. 107, 86 S.Ct.

---

3. In United States ex rel. Stinnett v. Hegstrom, supra, and White v. Reid, supra, the courts ruled that juvenile offenders committed to a juvenile institution under either the federal or District of Columbia juvenile act could not constitutionally be transferred to a penal correctional institution since juvenile court proceedings are "not criminal in nature" and a later transfer to a penal institution is "to permit confinement for crime without a right to trial." United States ex rel. Stinnett v. Hegstrom, supra, 178 F. Supp. at 19, 20. See White v. Reid, supra, 125 F.Supp. at 649, 126 F.Supp. at 870–871. The constitutional infirmity found to exist in these cases was not in the transfer procedures themselves, but in the non-criminal character of the initial juvenile proceedings. These holdings would seem to be at least partly vitiated by In re Gault, 387 U.S. 1, 87 S.Ct. 1428 (1966), where the Supreme Court held that a juvenile may not be committed for a juvenile offense to any type of institution without the traditional criminal constitutional safeguards. It must be here reiterated that in the present case petitioner makes no contention that any of these safeguards were lacking at his juvenile proceeding.

760, 15 L.Ed.2d 620 (1966). Petitioner urges that these decisions make it clear that a statute which provides for the transfer of an inmate of a juvenile institution to a "functionally different" institution without a judicial finding of fact to support the transfer and without traditional constitutional safeguards deprives the inmate of due process and equal protection of the laws. This Court, while acknowledging the impact of these decisions in their respective and distinct fields, does not feel that they require that the procedure set out in 15 M.R.S.A. § 2717 be struck down.

Petitioner's argument is two-pronged. First, he complains that he is deprived of the equal protection of the laws because under the transfer statute he is committed to the Correctional Center without a judicial proceeding, while other youths who are not in custody at the Training Center cannot be committed to the Correctional Center without at least a juvenile court hearing. Here he cites Baxstrom v. Herold, supra, which held that a procedure whereby an adult prisoner nearing the end of his sentence could be civilly committed for a period of time beyond the expiration of his prison term to a hospital for the criminally insane without the judicial determination available to a person not in custody, was a deprivation of equal protection of the laws in violation of the Fourteenth Amendment. But in Baxstrom the period of commitment was an extension of the term of the original criminal sentence imposed. In the present case the transfer does not prolong the period of confinement; it merely changes the environment in which the original judicially imposed commitment is to be served. The Baxstrom case would be apposite to this case only if the statute permitted an extension of the duration of the original commitment by virtue of the administrative transfer, which it clearly does not [4]. Cf. Bolton v. Harris, 395 F.2d 642 (D.C.Cir. 1968).

Petitioner's second contention is that the procedure under which he was transferred deprived him of due process of law in that a "critical finding" of a "new fact" which affected the type of petitioner's sentence was made administratively without the safeguards of criminal judicial procedures. For this point he cites, Specht v. Patterson, supra, and Mempa v. Rhay, supra. In the Specht case, the Supreme Court ruled that a "sexual offender" statute under which a person convicted of a specific crime could be given an indeterminate sentence upon an ex-parte finding that the defendant was "a threat of bodily harm to members of the public, or * * an habitual offender and mentally ill" was unconstitutional as a deprivation of due process. The difference between the present case and Specht is that the sentence under the sexual offender statute was a considerable enhancement of the maximum sentence for the crime of which Specht had in fact been convicted while in the present case the original commitment is not being extended in any way. In Mempa, the Court found that due process requires that counsel be present at the time of sentencing where sentence has been deferred subject to probation. However there the alternatives were probationary freedom or confinement, and the sentencing court had to determine whether probation should be revoked and a prison sentence imposed[5]. Here, petitioner is already

---

4. In fact, the procedure involved in the present case is more akin to the procedure by which Baxstrom had been transferred for the duration of his criminal sentence to a hospital for the criminally insane. The Court mentioned this transfer but did not intimate that the administrative transfer of a prison inmate to a functionally different institution for the duration of his original commitment, was constitutionally improper. 383 U.S. at 108, 86 S.Ct. 760. What the Court did invalidate was a procedure whereby Baxstrom was subjected to *further* confinement without the safeguards available to one not in custody.

5. In *Mempa* the Court also laid stress on the fact that under the applicable state law certain legal rights, notably the rights to appeal and to withdraw a guilty

confined pursuant to a valid commitment, and the administrative determination only affects the locus in which his confinement is to take place.

Finally, petitioner calls the Court's attention to In re Gault, supra, as the deathknell of the *parens patriae* doctrine often cited in justification of special procedures for dealing with juvenile offenders. But petitioner is not attacking the constitutional sufficiency of his original juvenile proceedings [6], nor does he maintain that a juvenile cannot be constitutionally committed to the Correctional Center in the first place. See 15 M.R.S.A. § 2611 (4A) (1964). But see United States ex rel. Stinnett v. Hegstrom, supra.

 As previously stated, petitioner makes no complaint that his original juvenile hearing was defective. He does not suggest that the provisions of the transfer statute were not complied with, nor does he charge arbitrary action or abuse of discretion by those responsible for his transfer. His sole attack is upon the constitutionality of a statute by which the Legislature of the State of Maine has vested in the Superintendent of the Training Center and the Commissioner of Mental Health and Corrections authority to transfer a juvenile offender from the Training Center to the Correctional Center when required for his welfare and the welfare of other inmates of the Training Center. Conceding that the Training Center and the Correctional Center are, as petitioner insists, functionally different institutions, it cannot be gainsaid that the essential aim of both institutions is the rehabilitation and return to society of the persons committed to their care and custody. See 15 M.R.S.A. §§ 2501 (1964), 2712 (1967 Supp.); 34 M.R.S.A. § 801 (1967 Supp.). To be sure, the methods employed at the Training Center in accomplishing this end are milder and more suited to young and impressionable boys than those utilized at the Correctional Center, which is given the task of reforming the older, less malleable youths and younger men. In fact, it is for this reason that the facilities of the Boys Training Center are not adequate for particularly obstreperous and intractable youths. Undoubtedly it is not desirable for a young boy to be kept in company with experienced criminals in a prison environment. However it is equally undesirable to have a disruptive and incorrigible youth hampering the program at a juvenile institution and exercising his unwholesome influence over the other boys there. In administering custodial and rehabilitative institutions, the state must have some latitude to determine what course of treatment is most appropriate for the individual inmate and to preserve discipline and protect the welfare of other inmates within its various institutions. The transfer provisions of 15 M.R.S.A. § 2717 are within this latitude, and the Court can find no constitutional defect in the procedure there outlined.

It is therefore ordered that the petition is dismissed and the writ denied.

---

plea, might be lost if not exercised at the deferred sentencing hearing. 389 U.S. at 135–136, 88 S.Ct. 254.

6. In *Gault* the Court expressly refrained from deciding what, if any, constitutional safeguards are required in pre-adjudication treatment and post-adjudication disposition of juvenile offenders. 387 U.S. at 31 n. 48, 87 S.Ct. 1428.